2013 UT App 198

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
FREDRICK C. WALKER,
Defendant and Appellant.

Opinion
No. 20110979-CA
Filed August 8, 2013

Fourth District, Provo Department
The Honorable Lynn W. Davis
No. 841409351

David Paul White, Attorney for Appellant
John E. Swallow and Ryan D. Tenney, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES JAMES Z. DAVIS and J. FREDERIC VOROS JR.
concurred.

CHRISTIANSEN, Judge:

¶1     Defendant Fredrick C. Walker appeals from the trial court's
denial of his motion to withdraw his guilty plea to one count of
sexual abuse of a child. We affirm.

## BACKGROUND

¶2     In September 1984, Defendant's stepmother reported that
then twenty-one-year-old Defendant had molested her three sons.
At the time, the victims were twelve, ten, and four years of age. On

September 20, 1984, the State charged Defendant with one count of sodomy on a child, a first degree felony, *see* Utah Code Ann. § 76-5-403.1(1), (2) (Allen Smith Supp. 1983), and two counts of sexual abuse of a child, both second degree felonies, *see id.* § 76-5-404.1(1), (2) (Supp. 1984). That same day, Defendant was brought before the trial court for his initial appearance. The court's minute entry from that hearing states that Defendant was "advised of [his] rights" and counsel was appointed to him.

¶3     One week later, Defendant appeared in court with his appointed counsel. After discussion with the State and the trial court, Defendant agreed to take a polygraph test. The parties agreed that if Defendant passed the test, the State would dismiss the charges, but if Defendant failed the test, the results would be admitted as evidence at Defendant's trial. Defendant failed the polygraph test. A preliminary hearing was held on October 18, 1984. At the close of the preliminary hearing, the magistrate bound Defendant over for trial, and Defendant hired private counsel shortly thereafter. At his subsequent arraignment, Defendant pleaded not guilty to all charges and the court scheduled the case for trial. Prior to trial, Defendant underwent a psychiatric evaluation to determine his competency to stand trial. The competency evaluator determined that Defendant "ha[d] an understanding of the[] charges filed against him . . . , of the processes of the court and sufficient factual information surrounding the charges to aid in his own defense in a court of law."

¶4     On the morning of the February 28, 1985 trial, Defendant informed the trial court that he had accepted a plea offer from the State. Defendant agreed to plead guilty to one count of sexual abuse of a child in exchange for the State's dismissal of the other charges. No transcript exists for this proceeding; however, the record does contain the trial court's minute entry of the hearing. The court's minutes indicate that Defendant was advised of his rights and the consequences of entering into a guilty plea.

¶5     Following this change of plea hearing, Adult Probation and Parole prepared a presentence investigation report (PSI). The Diagnostic Staff of the Utah Department of Corrections also prepared a ninety-day diagnostic evaluation report (Diagnostic Report). On June 21, 1985, the trial court sentenced Defendant to one to fifteen years in prison.

¶6     In late 1986, Defendant filed a habeas corpus petition, which the trial court denied. No records from that action remain, but Defendant has provided a copy of his notice of appeal and a pro se docketing statement stemming from the denial of that petition.

¶7     Well after his release from prison, Defendant filed a motion on August 10, 2010, to withdraw his guilty plea—more than twenty-five years after he originally entered into a plea agreement with the State. In support of his motion to withdraw his plea, Defendant produced affidavits from each of the three victims wherein they recant their original accusations of abuse. The State responded by contesting the trial court's jurisdiction based on the timing provisions contained in the plea withdrawal statute. The court ruled that it had jurisdiction over Defendant's motion and requested supplemental briefing on the merits of Defendant's claim. In his supplemental brief, Defendant requested an evidentiary hearing. After considering the victims' recantations and all other available records, the court denied Defendant's motion to withdraw his guilty plea and his request for an evidentiary hearing. Defendant now appeals.

ISSUES AND STANDARDS OF REVIEW

¶8     Defendant challenges the denial of his motion to withdraw his guilty plea on three grounds: (1) factual innocence, based primarily on the victims' recantations; (2) violations of Utah Code section 77-35-11(e) (now rule 11(e) of the Utah Rules of Criminal Procedure), *see* Utah Code Ann. § 77-35-11(e) (Allen Smith Supp. 1985) (repealed 1989) (providing that a court, in accepting a guilty

plea, must ensure that a defendant's guilty plea is entered knowingly and voluntarily); and (3) ineffective assistance of counsel and undue pressure. "[W]e review [t]he denial of a motion to withdraw a guilty plea . . . under an abuse of discretion standard, incorporating a clearly erroneous standard for findings of fact and reviewing questions of law for correctness." *State v. Person*, 2006 UT App 288, ¶ 8, 140 P.3d 584 (omission and second alteration in original) (citation and internal quotation marks omitted).

¶9     In the alternative, Defendant argues that the trial court should have granted his request for an evidentiary hearing so that he could have further developed the facts supporting his motion to withdraw his guilty plea. We review a trial court's decision to rule on a motion to withdraw a guilty plea without first holding an evidentiary hearing for an abuse of discretion. *Id.*

¶10    Before reaching the merits of Defendant's claims on appeal, we must resolve three issues raised by the State. First, the State renews its argument that the trial court lacked jurisdiction to hear the motion to withdraw Defendant's guilty plea. "This presents a question of law, which we review for correctness, granting no deference to the district court." *State v. Nicholls*, 2006 UT 76, ¶ 3, 148 P.3d 990.

¶11    Second, assuming the trial court had jurisdiction to review Defendant's motion, the State argues that res judicata nevertheless bars the court's review of Defendant's motion to withdraw. Even though the State raised this argument before the trial court, the court did not rule on the issue because it resolved the case on other grounds. "Whether a claim is barred by res judicata is a question of law that we review for correctness." *Gillmor v. Family Link, LLC*, 2012 UT 38, ¶ 9, 284 P.3d 622.

¶12    Finally, we must determine which legal standard applies to Defendant's motion to withdraw his guilty plea. Either we will apply the withdrawal of plea statute in effect when Defendant

entered his plea in 1985, which requires a showing of good cause, *see* Utah Code Ann. § 77-13-6 (Allen Smith 1982),[1] or, as the State urges, we will apply the law in effect when Defendant filed his motion in 2010—now the current law—requiring analysis of whether the guilty plea was entered knowingly and voluntarily, *see id.* § 77-13-6(2)(a) (LexisNexis 2012).[2] "Determining which version of [a] statute applie[s] is a matter of statutory interpretation, which presents a question[] of law which we review for correctness . . . ." *In re T.M.*, 2003 UT App 191, ¶ 9, 73 P.3d 959 (second and third alterations in original) (citation and internal quotation marks omitted).

ANALYSIS

I. Preliminary Issues Raised by the State

A.    Jurisdiction

¶13    The State argues that the trial court lacked jurisdiction to hear Defendant's motion to withdraw his guilty plea because it was untimely. The State maintains that "when Defendant waited to file his motion to withdraw, he became subject to the changing jurisdictional requirements that the [Utah] Legislature imposed on those motions—including the statute of limitations." Because time limitations on causes of action become operative when they are

---

1. The 1985 plea withdrawal statute reads, in relevant part, "A plea of guilty or no contest may be withdrawn only upon good cause shown and with leave of court." Utah Code Ann. § 77-13-6 (Allen Smith 1982).

2. The current law reads, in relevant part, "A plea of guilty or no contest may be withdrawn only upon leave of the court and a showing that it was not knowingly and voluntarily made." Utah Code Ann. § 77-13-6(2)(a) (LexisNexis 2012).

enacted, the State argues that Defendant's motion is governed by the 1989 amendment to the plea withdrawal statute. That amendment requires motions to withdraw a guilty plea to be filed within thirty days following entry of the guilty plea. *See* Utah Code Ann. § 77-13-6(2)(b) (Michie Supp. 1989) ("A request to withdraw a plea of guilty or no contest is made by motion, and shall be made within thirty days after the entry of the plea."). Prior to the 1989 amendment, no such time restriction existed. *See id.* (Allen Smith 1982). The State asserts that Defendant was put on constructive notice when the statute changed in 1989, and therefore, Defendant had thirty days from the moment the new time limitation became effective to file his motion to withdraw. According to the State, because Defendant failed to file his motion within the thirty-day limit, no court had jurisdiction to hear his motion to withdraw.

¶14    The State raised this jurisdictional argument below. The trial court concluded that, consistent with the supreme court's decision in *State v. Abeyta*, 852 P.2d 993 (Utah 1993) (per curiam), the 1989 amendment did not apply to Defendant's motion. Accordingly, the court ruled that it had jurisdiction to hear Defendant's motion.

¶15    We agree that *Abeyta* is dispositive here. As in this appeal, *Abeyta* involved a defendant who pleaded guilty before the 1989 amendment took effect and moved to withdraw his guilty plea more than thirty days after the 1989 amendment took effect. *See id.* at 995. In determining whether jurisdiction was proper, the supreme court observed that the 1989 amendment could not be retroactively applied to the defendant's guilty plea because the plea withdrawal statute provided no express statement allowing for retroactive application and because the 1989 amendment was a substantive, not procedural, change in the law. *See id.* Accordingly, the supreme court held that the trial court erred in barring the defendant's motion to withdraw his guilty plea, because the amendment did not apply. *See id.* Likewise, we conclude that Defendant's petition is not barred by the 1989 amendment.

¶16 The State attempts to distinguish *Abeyta* by asserting that it is not asking for a retroactive application of the plea withdrawal statute. Rather, the State cites *State v. Clark*, 2011 UT 23, 251 P.3d 829, "for the simple[] proposition that [courts] apply the law as it exists at the time of the event regulated by the law in question," *id.* ¶ 13. In this case, the State argues that the "event regulated by the law in question" is Defendant's 2010 motion to withdraw his guilty plea, as opposed to Defendant's act of entering his guilty plea in 1985. Under this reasoning, Defendant would be subject to the thirty-day time limit. However, our determination of the "event regulated by the law in question" turns on whether the plea withdrawal statute itself—not just the 1989 amendment—affects a party's substantive or procedural rights. *See id.* ¶ 14. Because we hold that the plea withdrawal statute is substantive, *see infra* ¶¶ 23–25, the law that governs Defendant's motion is the law in effect when he entered into his guilty plea in 1985. Consequently, we agree with the trial court that the thirty-day time limit does not apply under these circumstances. Regardless of how the State frames the issue, imposing the thirty-day time limit on Defendant's motion to withdraw would be an impermissible retroactive application of the 1989 amendment, based on the holding in *Abeyta* and the reasoning in *Clark.* Therefore, we conclude that the court properly exercised jurisdiction over Defendant's motion.[3]

---

3. We acknowledge that, as the State points out, other remedies exist for a criminal defendant to challenge a plea after expiration of the thirty-day time limit. Such measures include post-conviction remedies such as habeas corpus, which was utilized by Defendant. *See State v. Merrill*, 2005 UT 34, ¶ 25, 114 P.3d 585 ("[U]nlike the writ of habeas corpus, a motion to withdraw a guilty plea is not a last resort. This fact is made clear within the text of the current version of Utah Code section 77-13-6. Immediately following section 77-13-6(2)(b), which imposes the thirty-day filing limit, section 77-13-6(2)(c) preserves the right of a defendant to pursue challenges to the lawfulness of his guilty plea under both the Post-

(continued...)

B.      Res Judicata and Waiver

¶17     The State also raised a res judicata challenge before the trial court, but the court declined to rule on this argument because it resolved the case on other grounds. We reach this issue because the State renews its challenge on appeal. Res judicata has two branches: claim preclusion and issue preclusion. *Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 20, 16 P.3d 1214. Here, the State asserts only claim preclusion. "Claim preclusion is premised on the principle that a controversy should be adjudicated only once." *Mack v. Utah State Dep't of Commerce*, 2009 UT 47, ¶ 29, 221 P.3d 194 (citation and internal quotation marks omitted). The prior action implicating claim preclusion in this case, the State argues, is Defendant's 1986 petition for habeas corpus.

¶18     Claim preclusion has three requirements: (1) "both cases must involve the same parties or their privies"; (2) "the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action"; and (3) "the first suit must have resulted in a final judgment on the merits." *Macris*, 2000 UT 93, ¶ 20 (citation and internal quotation marks omitted). There is no dispute that the first element is met because Defendant and the State are the parties in each action. As to the second element, the only surviving document from the habeas corpus action is Defendant's pro se docketing statement taken from the appeal of the trial court's denial of his habeas petition. A finding of claim preclusion necessarily involves a close analysis of the prior action's issues and ruling. Without more reliable and accurate documentation, such as a copy of the actual habeas petition, a transcript of the hearing, or the judge's

---

3. (...continued)
Conviction Relief Act ('PCRA') and Utah Rule of Civil Procedure 65C, provisions that embody the elements of the traditional writ of habeas corpus." (citing Utah Code Ann. § 77-13-6(2)(c) (LexisNexis Supp. 2004) (current version at *id.* (2012)))).

written ruling, the State is unable to persuade us that the claims before us were, or could have and should have been, brought in Defendant's 1986 habeas petition. Thus, we determine that Defendant's motion is not barred by claim preclusion.

¶19    Alternatively, the State argues that Defendant's claims should be dismissed on account of waiver. We conclude that Defendant did not waive his right to move for withdrawal of his guilty plea. "Waiver is an intentional relinquishment of a known right." *Meadow Valley Contractors, Inc. v. State Dep't of Transp.*, 2011 UT 35, ¶ 45, 266 P.3d 671 (citation and internal quotation marks omitted). It requires demonstration of three elements: "(1) an existing right, benefit, or advantage; (2) knowledge of its existence; and (3) an intention to relinquish the right." *Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n*, 857 P.2d 935, 940 (Utah 1993). "The intent to relinquish a right must be distinct, although it may be expressed or implied." *Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 61, 289 P.3d 369 (citations and internal quotation marks omitted).

¶20    The State contends that Defendant waived his right to withdraw his guilty plea because he waited twenty-three years to do so after his petition for habeas corpus was denied. According to the State, this delay constituted an intentional relinquishment of Defendant's right to withdraw his plea. Defendant argues that his delay is not, on its own, a sufficient indication of intent to relinquish his right. We agree with Defendant. Although Defendant's delay is relevant, without additional facts demonstrating a distinct intent to relinquish his right to withdraw his guilty plea, we cannot conclude that waiver applies.

C.    The Controlling Version of the Plea Withdrawal Statute

¶21    Next, we must determine which version of the plea withdrawal statute applies to Defendant's motion to withdraw his guilty plea. Because Defendant filed his motion in 2010, the State argues that the proper legal standard should be whether he entered his plea knowingly and voluntarily—the standard adopted in

2003—as opposed to the good cause standard in effect when Defendant originally entered his plea in 1985. *Compare* Utah Code Ann. § 77-13-6 (Allen Smith 1982) (requiring showing of good cause), *with id.* § 77-13-6(2)(a) (LexisNexis 2012) (requiring showing that plea was not knowing and voluntary). The trial court applied the older good cause standard in evaluating Defendant's motion, though the court's decision does not explain its reasoning for doing so.

¶22     As a starting point, we "apply the law as it exists at the time of the event regulated by the law in question." *State v. Clark*, 2011 UT 23, ¶ 13, 251 P.3d 829; *see also State v. Johnson*, 2012 UT 68, ¶ 11, 290 P.3d 21. In this case, determining the "event regulated by the law in question" turns on whether the act of seeking to withdraw a guilty plea, as prescribed under the plea withdrawal statute, affects a party's substantive or procedural rights. *See Clark*, 2011 UT 23, ¶ 14.

> The difference is in the nature of the underlying occurrence at issue. On matters of *substance* the parties' primary rights and duties are dictated by the law in effect at the time of their underlying primary conduct (e.g., the conduct giving rise to a criminal charge or civil claim). When it comes to the parties' *procedural* rights and responsibilities, however, the relevant underlying conduct is different: the relevant occurrence for such purposes is the underlying procedural act (e.g., filing a motion or seeking an appeal).

*Id.* Our supreme court has "explained that a procedural statute controls the mode and form of procedure for enforcing the underlying substantive rights and merely affects the judicial machinery available for determining substantive rights." *Johnson*, 2012 UT 68, ¶ 12 (citation and internal quotation marks omitted). "By contrast, substantive statutes enlarge, eliminate, or destroy

vested or contractual rights." *Id.* (citation and internal quotation marks omitted).

¶23 Under this framework, we conclude that the plea withdrawal statute is substantive. When a defendant moves to withdraw a guilty plea, he or she is seeking to restore vested constitutional rights that were previously waived as a consequence of entering into a plea agreement. Such rights include the right to a jury trial, the right against self-incrimination, the right to confront witnesses, and perhaps the right to appeal. Reinstatement of these rights by withdrawing a plea of guilty does "not merely affect[] the judicial machinery available for determining substantive rights," but also operates as a substantive renewal of vested rights previously forfeited. *See id.* ¶ 13 (alteration in original) (citation and internal quotation marks omitted).

¶24 The 2003 amendment to the plea withdrawal statute, which changed the standard from good cause to knowing and voluntary, further illustrates the statute's substantive nature. Prior to the amendment, a defendant could seek to withdraw a guilty plea for any reason constituting "good cause." Theoretically, this standard encompasses an unlimited number of reasons for seeking to withdraw a guilty plea. On the other hand, the current knowing and voluntary standard is more narrow and precise than the good cause standard. The class of defendants eligible to withdraw guilty pleas is thus reduced under the new standard. Such a change does not affect the "mode and form of procedure for enforcing the underlying substantive rights" but rather eliminates substantive rights altogether. *See id.* ¶¶ 12, 14.

¶25 Because the plea withdrawal statute affects substantive rights, we conclude that the version of the statute in effect at the time Defendant entered his guilty plea in 1985 governs his plea withdrawal motion. Accordingly, we hold that the trial court correctly evaluated Defendant's motion under the good cause

standard.[4] *Cf. id.* ¶¶ 11–13, 19 (holding that because the reduction of conviction statute "prescribes the class of defendants who are eligible to seek reductions in convictions" and thereby "governs the scope of a defendant's vested or contractual rights in the ultimate conviction and associated sentence," the reduction of conviction statute is substantive and the version of the statute in effect at the time of a defendant's sentencing applies to a motion to reduce a conviction as opposed to the version in effect when the motion is filed (internal quotation marks omitted)).

## II. Merits of Defendant's Claims on Appeal

¶26    The trial court ruled that Defendant did not present good cause justifying the withdrawal of his guilty plea. As a result, the court denied Defendant's motion. Defendant appeals the court's ruling on the following three grounds: factual innocence, compliance with rule 11(e) of the Utah Rules of Criminal Procedure, and ineffective assistance of counsel. He also appeals the court's denial of his request for an evidentiary hearing.

### A.    Defendant's Claim of Factual Innocence

¶27    Defendant argues that the trial court abused its discretion in denying his motion to withdraw his guilty plea based on his claim of factual innocence. Defendant asserts that his "innocence is the ultimate good cause" for withdrawal of a guilty plea. Although Defendant points to various facts that he claims demonstrate his innocence, he relies primarily on certain affidavits presented to the court in which Defendant's victims recant their initial allegations of abuse.[5] Defendant argues that under *State v. Gallegos*, 738 P.2d

---

4. The State does not argue for a retroactive application of the plea withdrawal statute in effect when Defendant filed his motion.

5. Defendant points to the following as further evidence of his factual innocence: (1) Defendant pleaded not guilty to all charges

(continued...)

1040 (Utah 1987), *superseded by statute as recognized in State v. Ruiz*, 2012 UT 29, 282 P.3d 998, his motion for withdrawal should have been granted because the victims' recantations constituted "new and indisputably pivotal evidence." *See id.* at 1041–42 (discerning an abuse of discretion where the trial court did not permit a defendant to withdraw a plea of guilty prior to sentencing based on the victim's recantation of her preliminary hearing testimony). However, the supreme court noted in *State v. Ruiz*, 2012 UT 29, 282 P.3d 998, that in *Gallegos* there was a "complete lack of evidence presented by the prosecution" to refute the victim's recantation. *Id.* ¶ 35; *see also State v. Mildenhall*, 747 P.2d 422, 424 (Utah 1987) (identifying no abuse of discretion where the trial court denied a defendant's motion to withdraw his guilty plea because the victim's "notarized, certified [recantation] letter mailed to [the] defendant's attorney" had "implausible timing and suspicious content"). Here, the victims' recent recantations are contradicted by other evidence.

¶28    The trial court "determine[d] that the recent [recantations] and Defendant's claims of innocence d[id] not present good cause

---

5. (...continued)
at both arraignments; (2) Defendant was willing to accept defense counsel's and the prosecutor's agreement that he submit to a polygraph test in an attempt to prove his innocence; (3) Defendant did not desire to plead guilty the day of trial despite the insistence of defense counsel; (4) Defendant's mother had to plead with him, at defense counsel's insistence, to convince Defendant to plead guilty; (5) Defendant asserted his innocence in the psychiatric (competency) evaluation; (6) Defendant asserted his innocence in a letter for the PSI; and (7) Defendant continued asserting his innocence "emphatically" and was merely judged to be "displaying an extreme amount of denial and/or repression." As the trial court noted, most of what Defendant presents in these claims is based off his own "self-serving testimony." Thus, we focus our inquiry on the court's review of the victims' recantations in light of contradictory evidence.

to allow Defendant to withdraw his guilty plea, especially in the face of the strong evidence to the contrary." The court noted that the victims' recantations were "all typed and notarized statements *signed decades after the fact.*" (Emphasis added.) For comparison, the court had the transcripts of the victims' interviews with police "from *near the time of the alleged abuse.*" (Emphasis added.) The transcripts provide mutually corroborating, testimonial evidence regarding Defendant's offenses. They also convey graphic details of sexual abuse that would likely be outside the understanding of young children absent personal experience. For example, the court highlighted the fact that the transcripts are consistent with the four-year-old victim's hand-drawn picture of Defendant sodomizing him. Also, the victims had described a cycle of abuse that involved other individuals outside the case and allegations that they sexually abused each other according to Defendant's instructions. "On top of all this," the court explained, "Defendant failed a polygraph in which he denied these incidents." The court also rejected "Defendant['s] claim[] that this was all fabricated by a jealous step-mother," noting that "there are overwhelming reasons to doubt that." The court stated, "The graphic and disturbing testimony of the victims at the time, in which they describe abuse perpetrated not only by Defendant, but each other as well, is in stark contrast to the recent [recantations] denying wholesale [that] any kind of abuse occurred."

¶29    The evidence before the trial court also included the Diagnostic Report conducted by the Diagnostic Staff of the Utah Department of Corrections. Defendant emphasizes that not only did he voluntarily submit to the diagnostic exam, thus supporting his claim of innocence, but the Diagnostic Report "clearly showed 'he was not aroused by reading sexual material involving male children.'" However, the Diagnostic Report revealed that Defendant was "sexually aroused by erotic material involving female children who are either forced into sexual acts or who are willing participants in sexual acts," though it concluded that this arousal is likely due to "an immature sexual identification rather than pedophilia per se." Defendant also admitted that he had

"harmful or shocking" impulses during the diagnostic exam, and the evaluator concluded that Defendant was unable to delay gratification of his impulses.

¶30    Additionally, the trial court expressed concern that if Defendant had been allowed to withdraw his plea, the State would be prejudiced, stating, "The State would be at a great disadvantage since the long lapse of time has destroyed memories and other evidence." *Cf. Mildenhall*, 747 P.2d at 424 (explaining that withdrawal of a defendant's guilty plea would "greatly prejudice the State" because the original victim was unavailable). Indeed, not only are the original judge, defense counsel, and district attorney deceased, but the transcripts of two of the victims' preliminary hearing testimony no longer exist. Further, the State could not introduce the questions and answers of Defendant's failed polygraph test because the results of that test no longer exist. At trial, the State could only introduce the fact that Defendant failed the polygraph test. It is also unlikely that the State would be able to find supporting witnesses that may have been available at the time of the original trial. For example, in their interviews with police, the victims spoke of other neighbor children who may have been aware of the abuse. Also, the State points out that it could have interviewed the victims' teachers or youth leaders regarding whether the victims displayed signs of abuse but that such an opportunity is no longer available.

¶31    Defendant argues that there are other existing sources for the same information, including the prosecutor who handled the case, key documents from the original record, and the victims and their mother. Defendant also notes that because he has already served out his entire sentence, the State has no remaining interest in his punishment. *Cf. Currier v. Holden*, 862 P.2d 1357, 1376 (Utah Ct. App. 1993) (Orme, J., concurring in the result) ("'[A]ny increasing staleness [regarding retrial] is offset by a decreasing state interest in punishment: The farther in time a postconviction proceeding is from the original conviction, the more difficult will be retrial but, equally, the greater the portion of the original

sentence that will already have been completed'" (quoting *People v. Germany*, 674 P.2d 345, 350 n.5 (Colo. 1983))), *superseded by statute as stated in Manning v. State*, 2004 UT App 87, 89 P.3d 196. It appears from the court's ruling, however, that the court did consider several important State interests. The court explained that if it "were . . . to grant [Defendant's motion], it would open the floodgates to decades old cases and no case would become final. That would result in legal obligations to retain evidence in all criminal cases, essentially forever. Closure would be impossible for all parties including victims."

¶32 In light of the evidence contradicting the victims' recantations, the trial court's detailed review of these and all other available documents, and the resulting prejudice to the State should it wish to try the matter, we hold that the court did not abuse its discretion in denying Defendant's motion based on his claim of factual innocence.

B.      The Plea-Taking Court's Compliance with Rule 11(e)

¶33 When Defendant entered his plea in 1985, rule 11(e) of the Utah Rules of Criminal Procedure—then codified as part of the Utah Code—outlined the procedures that a trial court was required to follow when accepting a guilty plea. *Compare* Utah Code Ann. § 77-35-11(e) (Allen Smith Supp. 1985), *with* Utah R. Crim. P. 11(e).[6] Defendant argues that the judge who accepted and entered his guilty plea did not comply with subsections (2), (3), and (4) of rule 11(e). *See* Utah Code Ann. § 77-35-11(e)(2)–(4).[7] Specifically,

---

6. Utah Code section 77-35-11 was repealed effective July 1, 1990, *see* Act of Mar. 14, 1989, ch. 187, § 15, 1989 Utah Laws 479, 486, and replaced with rule 11 of the Utah Rules of Criminal Procedure, *see* Utah R. Crim. P. 11.

7. The text of section 77-35-11(e)(2)–(4) reads:
        (e) The court may refuse to accept a plea of guilty or

                                                (continued...)

Defendant argues that the judge failed to ask him what facts he was pleading guilty to, failed to ascertain whether he understood the relationship between the facts and the law, and failed to fully inform him of his rights. Defendant asserts that these alleged rule 11(e) violations now present good cause for withdrawal of his guilty plea.

¶34    Prior to the Utah Supreme Court's decision in *State v. Gibbons*, 740 P.2d 1309 (Utah 1987), a trial court was required to substantially comply with the factors set forth in rule 11(e) before accepting a guilty plea.[8] *See State v. Hoff,* 814 P.2d 1119, 1123 (Utah 1991) (explaining that prior to *Gibbons*, "a guilty plea was valid and could not be withdrawn if the trial court demonstrated substantial

---

7. (...continued)

> no contest and shall not accept a plea until the court has made the findings:
>
> . . .
>
> > (2) That the plea is voluntarily made;
> >
> > (3) That the defendant knows he has rights against compulsory self-incrimination, to a jury trial and to confront and cross-examine in open court the witnesses against him, and that by entering the plea he waives all of those rights;
> >
> > (4) That the defendant understands the nature and elements of the offense to which he is entering the plea; that upon trial the prosecution would have the burden of proving each of those elements beyond a reasonable doubt; and that the plea is an admission of all those elements . . . .

Utah Code Ann. § 77-35-11(e)(2)–(4) (Allen Smith Supp. 1985).

8. *State v. Gibbons*, 740 P.2d 1309 (Utah 1987), mandated that trial courts strictly comply with the requirements of rule 11(e) in taking guilty pleas. *Id.* at 1312–14; *see also State v. Hoff,* 814 P.2d 1119, 1122 (Utah 1991).

compliance with Rule 11" and that "[i]n cases decided after *Gibbons* involving guilty pleas entered before the issuance of *Gibbons*, [the courts] have applied the pre-*Gibbons* substantial compliance standard"). We therefore apply the "substantial compliance" standard to Defendant's plea. This means that so long as "the record as a whole affirmatively establishes that the defendant entered his [or her] plea with full knowledge and understanding of its consequences and of the rights he [or she] was waiving," the plea may not be withdrawn. *State v. Blair*, 868 P.2d 802, 806 (Utah 1993) (alterations in original) (citation and internal quotation marks omitted). In other words, to permit withdrawal of a guilty plea under the substantial compliance standard, there must have been "a significant departure from Rule 11 requirements which [leads] to considerable doubt as to whether a defendant's plea was knowing and voluntary." *Hoff*, 814 P.2d at 1125. "The determination of whether there was substantial compliance with Rule 11 must necessarily turn on the facts of each case." *Id.*

¶35   In evaluating Defendant's rule 11(e) claims, the trial court "determined that Defendant was proceeding knowingly, willingly, and with a full understanding" when he entered his plea because the surviving records "demonstrate that the [plea-taking] court . . . ensured Defendant knew his rights, knew the consequences of pleading guilty, and knew the crimes he was charged with."

¶36   Based upon our review of the record as a whole, or at least what remains of the record, we agree with the trial court's conclusion. The plea-taking court's minutes indicate that Defendant "was brought before the court and the court advised him of his rights and the consequences of entering such a plea and that the court is not bound by any plea bargaining between [Defendant] and the State"; "[t]he Amended charge [was] read to [D]efendant"; "[t]he court [was] of the opinion that [D]efendant fully [understood] the consequences" of his plea "and the amendment as indicated [was] approved"; "the court [found that] the plea [was] entered knowingly, willingly and with a full

understanding of his rights"; "the previous[] pleas of Not Guilty [were] allowed to be withdrawn and the plea of Guilty entered"; "the court again advised [Defendant] of his rights"; and perhaps most tellingly, Defendant's counsel "addressed the court and stated he ha[d] discussed the matter with [Defendant] at length and [Defendant] agree[d] this [was] the best solution to the problem."

¶37    Other parts of the record also indicate the plea-taking court's substantial compliance with rule 11(e). *See State v. Maguire*, 830 P.2d 216, 217 n.1 (Utah 1992) (per curiam) (observing that "it is possible that the definition of the 'record as a whole' under the substantial compliance test might be broader (including information in the case known to the defendant but not to the judge taking the plea—e.g., evidence at preliminary hearing, confessions, etc.) than it is under the strict compliance test"). Defendant was "advised of [his] rights" and the court "read [the] charges" at his initial appearance. Defendant was present at the preliminary hearing during which his counsel cross-examined two of the victims. At his arraignment, Defendant "was questioned by the court as to his understanding of the charges filed against him" and "[D]efendant waived the reading of the Information having previously been given a copy." And a competency evaluator determined that Defendant "ha[d] an understanding of the[] charges filed against him . . . [and] of the processes of the court and sufficient factual information surrounding the charges to aid in his own defense in a court of law."

¶38    Defendant relies on his and his mother's affidavits as evidence of the plea-taking court's rule 11(e) violations. These two documents, prepared twenty-five years after the fact, must be balanced against the weight of what remains of the trial record, particularly because Defendant has failed to provide a transcript of the plea colloquy. *See generally State v. Litherland*, 2000 UT 76, ¶ 11, 12 P.3d 92 ("If an appellant fails to provide an adequate record on appeal, [appellate courts] must assume the regularity of the proceedings below." (citation and internal quotation marks

omitted)). Indeed, Defendant has failed to identify any other document in the record revealing a "significant departure" by the plea-taking court from the rule 11(e) requirements that would create doubt that Defendant's plea was anything other than knowing and voluntary. *See Hoff,* 814 P.2d at 1125. Thus, we agree with the trial court's assessment that the plea-taking court substantially complied with rule 11(e) in accepting Defendant's plea of guilty because the surviving record "affirmatively establishes that [D]efendant entered his . . . plea with full knowledge and understanding of its consequences and of the rights he . . . was waiving." *See Blair*, 868 P.2d at 806. Accordingly, we hold that the trial court did not abuse its discretion in denying Defendant's motion based on its rejection of Defendant's rule 11(e) claims.

C.    Ineffective Assistance of Counsel

¶39    Defendant argues that the trial court erred by denying his claim of ineffective assistance of counsel as a basis for withdrawing his guilty plea. As an initial matter, we note that "if a trial court has previously reviewed the ineffective assistance of counsel claim, an appellate court is 'free to make an independent determination of a trial court's conclusions[, though t]he factual findings of the trial court . . . shall not be set aside on appeal unless clearly erroneous.'" *State v. Kozlov*, 2012 UT App 114, ¶ 29, 276 P.3d 1207 (alteration and omission in original) (quoting *State v. Templin*, 805 P.2d 182, 186 (Utah 1990)).

¶40    To succeed on a claim of ineffective assistance of counsel, a "[d]efendant must first establish that his counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable professional judgment." *Id.* ¶ 51 (citation and internal quotation marks omitted). Second, a defendant must demonstrate "that counsel's performance prejudiced the defendant, i.e., there is a reasonable probability . . . that except for ineffective counsel, the

result would have been different." *Id.* ¶ 52 (omission in original) (citation and internal quotation marks omitted). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Templin*, 805 P.2d at 187 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Failure to establish both deficient performance and the resulting prejudice is fatal to an ineffective assistance claim. *State v. Tennyson*, 850 P.2d 461, 466 (Utah Ct. App. 1993).

¶41　Defendant alleges that his counsel's performance was deficient because counsel failed to investigate and prepare for trial; failed to advise Defendant of his rights prior to pleading guilty, including his right to withdraw his guilty plea; and together with Defendant's mother, improperly pressured Defendant into entering into a plea agreement. However, even if counsel's performance was deficient, it is readily apparent from the record that Defendant suffered no resulting prejudice. *See generally Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.").

¶42　To show prejudice in the context of a guilty plea, the defendant "must convince [us] that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010); *see also United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002) (stating that a "mere allegation that [a defendant] would have insisted on trial . . . is ultimately insufficient to entitle him to relief" (citation and internal quotation marks omitted)). When making this determination, courts "review the strength of the prosecutor's case as the best evidence of whether a defendant in fact would have changed his plea and insisted on going to trial." *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001); *see also State v. Hales*, 2007 UT 14, ¶ 86, 152 P.3d 321 ("[I]n determining the effect of the error, we consider

the totality of the evidence . . . ." (citation and internal quotation marks omitted)).

¶43    At the time Defendant entered his plea, the evidence against him was substantial. On the morning of the trial, the three young victims were prepared to testify in graphic detail regarding Defendant's sexual abuse. Defendant offers us no reason to believe that the victims' testimonies would have varied materially from their mutually corroborating police interviews and the preliminary hearing testimony of the two older boys, which testimony was credible enough to establish probable cause to bind Defendant over for trial. Also, the State was prepared to introduce the results of Defendant's failed polygraph, which was, by agreement, admissible at trial. Had Defendant been convicted on all three counts, he could have faced life in prison. *See generally* Utah Code Ann. § 76-5-403.1(2) (Allen Smith Supp. 1983); *id.* § 76-5-404.1(3) (Supp. 1984).

¶44    Furthermore, Defendant had little evidence to rebut the State's case at trial other than his own testimony. Defendant's chances of acquittal would have likely hinged on the jury's acceptance of his theory that his jealous stepmother fabricated the abuse and pressured the victims into making false allegations. But as the trial court noted, "there are overwhelming reasons to doubt that" theory. For example, the victims had described a cycle of abuse that involved other individuals outside the case and allegations that they sexually abused each other according to Defendant's instructions. A jury would likely doubt that a mother would have coerced her own children into implicating themselves and others in a cycle of sexual abuse just so she could get rid of an adult stepchild whom she did not have to allow to live in her home.

¶45    In consideration of the totality of the evidence, we determine that Defendant has failed to demonstrate that it would have been rational for him to insist on going to trial as opposed to accepting

a plea deal. Thus, Defendant cannot establish prejudice and his ineffective assistance of counsel claim necessarily fails.[9]

D.      Defendant's Request for an Evidentiary Hearing

¶46     Defendant argues that in rejecting his request for an evidentiary hearing, the trial court denied him due process and thereby abused its discretion. Defendant essentially maintains that had he been afforded an evidentiary hearing, he would have been

---

9. We also determine Defendant's claim of coercion to be without merit. Defendant argues that he involuntarily pleaded guilty "due to defense counsel's undue pressure and improper inducement." The "undue pressure" to which Defendant refers includes his allegations that his trial counsel convinced Defendant's mother to pressure Defendant into pleading guilty, allegedly by instilling fear in her and counsel's misrepresenting the length of time that Defendant would spend in jail. According to Defendant, counsel's intent was to dispose of the case through a plea deal from the very beginning of the case. These alleged facts are supported only by the affidavits supplied by Defendant and his mother. Also, because Defendant could have faced life in prison, *see supra* ¶ 43, it seems highly unlikely that his trial counsel could have misrepresented his possible sentence. Furthermore, so long as Defendant's trial counsel acted in good faith, trial counsel's conduct under these circumstances is insufficient to warrant reversal. For example, in *State v. Thorup*, 841 P.2d 746 (Utah Ct. App. 1992), we rejected a similar claim of undue influence where the trial court found that

> "the evidence presented shows nothing more than an attorney counseling the defendant and his family with regard to what he considers to be the best approach, knowing all of the facts from the defendant's point of view and giving his considered judgment and advice to the defendant and his family that the plea barg[a]in was in the defendant's best interest."

*Id.* at 748 (alteration and omission in original) (citation omitted).

able to present "more relevant information" regarding "serious familial issues" that could not "be fully addressed through affidavits." Accordingly, Defendant asks us to "remand the case for an evidentiary hearing."

¶47 The trial court determined that an "evidentiary hearing [was] not necessary in this matter" because "at best the hearing would present the same information and testimony supplied by Defendant." The court further explained,

> [If an evidentiary hearing were held, t]he recanting victims would need to be represented by counsel and possibly be subject to perjury charges. The State would be at a great disadvantage since the long lapse of time has destroyed memories and other evidence. The State would be forced to rely on the evidence in the record, which it has already supplied. The Court gives credit to that record and its conclusions.

The court carefully weighed Defendant's request for an evidentiary hearing in light of other concerns such as prejudice to the State and the unnecessary duplication of evidence.

¶48 In arguing that the trial court should have held an evidentiary hearing, Defendant primarily relies on *Summers v. Cook*, 759 P.2d 341 (Utah Ct. App. 1988), and *State v. Humphrey*, 2003 UT App 333, 79 P.3d 960. In *Summers*, we observed that regardless of whether a defendant attacks a guilty plea directly through a motion to withdraw or collaterally, "an evidentiary hearing must ordinarily be held unless the record of a prior hearing shows petitioner is clearly not entitled to relief." 759 P.2d at 344–45. Here, even though no record of a prior evidentiary hearing exists, the trial court had access to Defendant's numerous affidavits and other exhibits. In the court's view, this documentary evidence accomplished the same purpose as would an evidentiary hearing. Based on that information, the court determined that Defendant was clearly not entitled to relief. In *Humphrey*, we remanded

because "the record [was] unclear as to whether the court made the necessary credibility assessment and factual determinations . . . to support its ruling on [the defendant's] motion to withdraw his plea." 2003 UT App 333, ¶¶ 11, 13. In this case, the trial court's written ruling adequately details its factual determinations and credibility assessments of the key witnesses involved, including Defendant, Defendant's mother, and the victims.

¶49   Moreover, Defendant does not identify what additional evidence he would have presented had he been afforded an evidentiary hearing. For example, the State correctly notes that Defendant "never explains what additional factual assertions his victims might have made on the stand, nor does he offer any reason why they were prevented from making those assertions in their affidavits." Defendant also fails to identify any additional witnesses that he may have called or explain why those witnesses did not submit affidavits. Thus, we conclude that the trial court did not abuse its discretion in ruling on Defendant's motion to withdraw his guilty plea without an evidentiary hearing.

CONCLUSION

¶50   We hold that the trial court had jurisdiction over Defendant's motion to withdraw his guilty plea and that his motion is not barred by claim preclusion or waiver. We also hold that the court acted within its discretion in determining that good cause did not exist to allow Defendant to withdraw his plea based on his claims of factual innocence, alleged violations of rule 11(e), and ineffective assistance of counsel. Finally, it was not an abuse of discretion for the court to reject Defendant's request for an evidentiary hearing.

¶51   Affirmed.

————————