*This opinion is subject to revision before
publication in the Pacific Reporter*

**2014 UT 31**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

RAMIRO OSEGUERA JR.,
*Petitioner and Appellant,*

*v.*

STATE OF UTAH,
*Respondent and Appellee.*

No. 20120018
Filed July 29, 2014

Second District, Ogden Dep't
The Honorable Noel S. Hyde
No. 110902070

Attorneys:

Hakeem Ishola, Jonathan Benson, Aaron Tarin, Carlos Navarro,
West Valley City, for appellant

Sean D. Reyes, Att'y Gen., Ryan D. Tenney, Asst. Att'y Gen.,
Salt Lake City, for appellee

ASSOCIATE CHIEF JUSTICE NEHRING authored the opinion of
the Court, in which CHIEF JUSTICE DURRANT, JUSTICE DURHAM,
JUSTICE PARRISH, and JUSTICE LEE joined.

ASSOCIATE CHIEF JUSTICE NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1   Mr. Ramiro Oseguera-Garcia Jr. (Mr. Oseguera)[1] was a
lawful permanent resident of the United States when he pleaded
guilty to felony theft in January 2002.  In 2010, Mr. Oseguera was
arrested   by   Immigration   and   Customs   Enforcement   and

---

[1] The spelling of Mr. Oseguera's name appears in the record as
both Ramiro Osegura-Garcia Jr. and Ramiro Oseguera-Garcia Jr.
We use Ramiro Oseguera-Garcia Jr., as that name appears on his
permanent resident card, his social security card, and the parties'
briefs.

deportation proceedings were initiated, in part due to Mr. Oseguera's 2002 felony theft conviction. Mr. Oseguera filed for relief under the Utah Post-Conviction Remedies Act (PCRA) seeking to withdraw his guilty plea to theft. Mr. Oseguera claimed his counsel was ineffective during the plea process because counsel failed to disclose the possible immigration consequences of Mr. Oseguera's plea. In the alternative, Mr. Oseguera sought relief through a writ of coram nobis. After a hearing and argument, the district court dismissed Mr. Oseguera's petition and writ of coram nobis upon determining that (1) Mr. Oseguera's petition was time barred by the PCRA and (2) he was not deprived of effective assistance of counsel. Mr. Oseguera appealed, and the Utah Court of Appeals certified the appeal to this court. We affirm the district court's dismissal of Mr. Oseguera's PCRA petition and writ of coram nobis.

## BACKGROUND

¶ 2    Mr. Oseguera was born in Mexico in November 1972. He entered the United States in June 1978 and became a lawful permanent resident of the United States on January 9, 1989. In November 2001, Mr. Oseguera was employed as a clerk at a gas station. On November 18, 2001, the station manager phoned local police and reported that a regular customer had left her purse on the counter and the purse was not in the station's lost and found. The South Ogden Police Department was dispatched to the station to investigate the possible theft of the purse. The manager phoned Mr. Oseguera, who was the clerk working at the time the customer left her purse, to ask about the missing purse. Mr. Oseguera responded that he had not seen the purse. The station manager and the South Ogden police officer reviewed the surveillance camera footage for the interval between when the purse was left and when the purse disappeared. The video showed the customer leave her purse on the counter, another customer hand the purse to Mr. Oseguera, and Mr. Oseguera place the purse behind the counter. The video also revealed that some time later, Mr. Oseguera put on his coat, walked to the location of the purse, then walked away, and thereafter, the purse was gone. After viewing the video tape, the station manager phoned Mr. Oseguera again and asked him to return to the gas station. When Mr. Oseguera returned, he was asked again about the purse. Mr. Oseguera claimed he did not know what

happened to the purse and denied taking it, but then stated that he could not "afford to be in any more trouble" because he was on probation and had a scholarship at Weber State University. Mr. Oseguera offered to reimburse the victim any money that may have been lost in order to "solve the problem." The officer arrested Mr. Oseguera and booked him into Weber County jail on a charge of theft.

¶ 3   Due to prior theft convictions, Mr. Oseguera was charged with one count of third-degree felony theft under Utah Code sections 76–6–404 and –412(1)(b)(ii). Mr. Oseguera had previously been convicted of retail theft on May 3, 2000, theft on July 12, 2000, and retail theft on September 1, 2000—all three crimes were class B misdemeanors. Mr. Oseguera was ordered to serve eighteen months probation for these theft charges and was still on probation when he committed the theft of the purse on November 18, 2001.

¶ 4   Mr. Oseguera hired Mr. Daniel Drage to represent him in the November 2001 theft charge. On January 22, 2002, Mr. Oseguera pleaded guilty as charged. In exchange for his plea, the State agreed not to oppose a "402(b) reduction" upon the completion of probation and to "defer to [Adult Probation and Parole's] recommendation" at the time of Mr. Oseguera's sentencing. On March 7, 2002, Mr. Oseguera was sentenced to sixty days in jail, to be followed by probation.

¶ 5   Over eight years later, in September 2010, federal immigration officials began deportation proceedings against Mr. Oseguera based in part on his January 2002 plea.[2] On March 22, 2011, Mr. Oseguera filed a petition asking the district court to vacate his January 2002 plea under the PCRA or, alternatively, through a writ of coram nobis. In his petition and accompanying affidavit, Mr. Oseguera asserted he was denied effective assistance of counsel during the plea process because he was never informed of potential immigration consequences related to his plea.

¶ 6   The State moved for summary judgment on the grounds that (1) Mr. Oseguera's claims were time barred and

---

[2] *See Oseguera-Garcia v. Holder*, 485 F. App'x 948, 949–50 (10th Cir. 2012).

(2) Mr. Oseguera's claims failed as a matter of law. The district court denied the State's motion, concluding that issues of fact existed regarding the timeliness of Mr. Oseguera's claims. The district court held a hearing, during which it received exhibits and heard testimony from Mr. Oseguera and Mr. Drage to resolve the time bar issue. At the hearing, Mr. Oseguera testified that he and Mr. Drage spoke regarding the possible consequences of a plea deal and he learned that the plea may lead to his deportation. Following the hearing, the district court entered findings of fact and conclusions of law. The district court found that Mr. Oseguera's testimony did not match his affidavit, in which he stated he was never informed of potential immigration consequences. Rather, the district court found that Mr. Oseguera and his attorney "did discuss deportation, [and] that [Mr.] Oseguera was advised the plea could lead to deportation."

¶ 7 The district court concluded Mr. Oseguera knew or should have known in the exercise of reasonable diligence that there were potential immigration consequences related to his plea. The district court further concluded that because Mr. Oseguera was aware of the evidentiary facts underlying his PCRA petition during the 2002 plea discussions, the time for filing his post-conviction action began running at his March 2002 sentencing and thus expired before he filed his post-conviction petition. Although unnecessary, the district court also concluded that Mr. Oseguera did not receive ineffective assistance of counsel, particularly in light of the complexities of immigration law. The district court denied Mr. Oseguera's PCRA petition and his request for a writ of coram nobis.

¶ 8 Mr. Oseguera appealed the district court's denial of relief to the Utah Court of Appeals. The court of appeals heard oral argument on the matter and later certified the appeal to this court. We have jurisdiction over this appeal under Utah Code section 78A–3–102(3)(b).

**STANDARD OF REVIEW**

¶ 9 "On appeal from a ruling on a petition for post-conviction relief, we review the post-conviction court's legal conclusions for correctness," granting no deference to the district

4

court.[3] We review the district court's factual findings for clear error.[4] Additionally, "an appellant must properly preserve an issue in the district court before it will be reviewed on appeal."[5]

## ANALYSIS

### I. MR. OSEGUERA FAILED TO PRESERVE HIS ARGUMENT THAT HIS ATTORNEY AFFIRMATIVELY MISREPRESENTED THE IMMIGRATION CONSEQUENCES OF HIS PLEA

¶ 10 "As a general rule, claims not raised before the [district] court may not be raised on appeal."[6] This preservation rule serves two policy aims: (1) it enhances efficiency and fairness and (2) it "generally assure[s] that most claims are raised and resolved in the first instance by the original trial court."[7] To serve these policies, we have held that the preservation rule applies to every claim, including constitutional questions.[8] "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on [it]."[9] "In determining whether the district court had an opportunity to rule on an issue, a court considers three factors: (1) whether the issue was raised in a timely fashion, (2) whether the issue was specifically raised, and (3) whether supporting evidence or relevant authority was introduced."[10] A party cannot circumvent

---

[3] *Tillman v. State*, 2005 UT 56, ¶ 14, 128 P.3d 1123.

[4] *Id.*

[5] *O'Dea v. Olea*, 2009 UT 46, ¶ 15, 217 P.3d 704.

[6] *Winward v. State*, 2012 UT 85, ¶ 9, 293 P.3d 259 (alteration in original) (internal quotation marks omitted).

[7] *State v. Prion*, 2012 UT 15, ¶ 19, 274 P.3d 919; *see also Winward*, 2012 UT 85, ¶ 9; *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346.

[8] *Prion*, 2012 UT 15, ¶ 19; *Holgate*, 2000 UT 74, ¶ 11.

[9] *Gressman v. State*, 2013 UT 63, ¶ 45, 323 P.3d 998 (alteration in original) (internal quotation marks omitted).

[10] *Winward*, 2012 UT 85, ¶ 9 (internal quotation marks omitted); *see also State v. Low*, 2008 UT 58, ¶ 17, 192 P.3d 867; *State v. Hansen*, 2002 UT 114, ¶ 13, 61 P.3d 1062.

our preservation rules by merely mentioning an issue without analyzing supporting evidence or relevant legal authority.[11] Additionally, a party that makes an objection based on one ground does not preserve any alternative grounds for objection for appeal.[12]

¶ 11 Mr. Oseguera filed a petition for post-conviction relief based on the claim that he was denied the assistance of effective counsel during his 2002 plea for felony theft because his attorney told him there would be "no immigration consequences" as a result of his plea. Mr. Oseguera submitted an affidavit in support of his post-conviction relief petition, in which he stated he was concerned that the felony theft charge would affect his immigration status and that his attorney did not tell him of the immigration consequences of the plea agreement.

¶ 12 On appeal, however, Mr. Oseguera argues that he was denied effective assistance of counsel because his attorney made affirmative misstatements regarding the immigration consequences of his plea agreement. This argument is necessarily premised on our caselaw as it existed before the United States Supreme Court's opinion in *Padilla v. Kentucky*,[13] because *Padilla* does not apply retroactively to defendants whose convictions became final prior to the decision.[14] Mr. Oseguera's conviction became final years before *Padilla* was decided, and thus, *Padilla* does not apply to Mr. Oseguera's claim. Before *Padilla*, we adopted the view that deportation was a collateral consequence of a conviction, and as such, defense counsel was not required to advise a client of the immigration consequences of a guilty plea.[15]

---

[11] *State v. Cruz*, 2005 UT 45, ¶ 33, 122 P.3d 543 ("[A] mere mention [of an issue] does not preserve that issue for appeal." (internal quotation marks omitted)).

[12] *Low*, 2008 UT 58, ¶ 17.

[13] 559 U.S. 356 (2010). In *Padilla*, the Supreme Court held that counsel's failure to advise a defendant of the immigration consequences of a plea agreement was deficient performance. *Id.* at 368–69.

[14] *Chaidez v. United States*, __ U.S. __, 133 S. Ct. 1103, 1113 (2013).

We also adopted an exception to the collateral consequences rule "when counsel affirmatively, but erroneously, represents that the accused will not be subject to deportation."[16]

¶ 13 After careful review of the record, we conclude that Mr. Oseguera did not argue that his counsel made an affirmative misrepresentation in his post-conviction action. In his post-conviction relief petition and supporting affidavit, Mr. Oseguera argued that his counsel never informed him of the immigration consequences of his plea agreement.[17] The same argument was presented in Mr. Oseguera's post-conviction pleadings. In his memorandum opposing the State's motion for summary judgment, Mr. Oseguera continued to assert that Mr. Drage assured him that "the plea would not affect his immigration status," and that there would be "no immigration consequences" of his guilty plea. In closing arguments at the post-conviction hearing, Mr. Oseguera's counsel did refer to Mr. Drage's advice as "affirmative misstatements" and "affirmative misadvice." Despite this, Mr. Oseguera's counsel—on rebuttal—phrased his reference to "affirmative misstatements" or "misadvice" as merely hypothetical. Mr. Oseguera's counsel argued that a hypothetical statement informing Mr. Oseguera that his plea "may not get [him] deported" would have been affirmative misadvice; however, Mr. Oseguera's counsel conceded "that [such a statement] never happened, though." The district court also noted "that evidence with respect to the advice of counsel was heard by the Court, but neither party specifically addressed" whether counsel's advice "constituted . . . ineffective assistance of counsel." The district court ultimately found that Mr. Drage did discuss the possibility of deportation with Mr. Oseguera before he entered his plea.

¶ 14 The only issue presented specifically to the district court was whether Mr. Drage discussed deportation with Mr. Oseguera

---

[15] *State v. Rojas-Martinez*, 2005 UT 86, ¶ 20, 125 P.3d 930, *abrogated by Padilla*, 559 U.S. 356.

[16] *Id.* ¶ 15 (internal quotation marks omitted).

[17] In his affidavit, Mr. Oseguera specifically stated, "Mr. Drage did not tell me about the immigration consequences of the plea even though he knew I was an immigrant from Mexico."

as a possible consequence of his guilty plea. Mr. Oseguera did not present the issue of whether Mr. Drage affirmatively misstated the law. Mr. Oseguera did not present any legal authority on the affirmative misstatement or misadvice to the district court. Thus, the issue of whether Mr. Drage's advice was an affirmative misrepresentation was not presented to the district court in such a way that the court had an opportunity to rule on it.[18] We therefore conclude that Mr. Oseguera's argument on appeal regarding affirmative misrepresentation is not preserved.

¶ 15 Under ordinary circumstances, we will not consider an issue raised for the first time on appeal unless "(1) the appellant establishes that the district court committed 'plain error,' (2) 'exceptional circumstances' exist, or (3) in some situations, if the appellant raises a claim of ineffective assistance of counsel in failing to preserve the issue."[19] However, when a party seeks review of an unpreserved objection, "we require that the party articulate an appropriate justification for appellate review."[20] The party seeking review must present the justification in the party's opening brief.[21] Mr. Oseguera failed to do this. Mr. Oseguera does not argue plain error or any other exception to our preservation rule. As such, we decline to address Mr. Oseguera's claims under our exceptions.[22]

¶ 16 Because Mr. Oseguera presents a new argument on appeal, one not presented to the district court, we conclude Mr. Oseguera's argument is unpreserved, and thus, we do not address the merits of his claim on appeal. Therefore, the district court's decision to deny Mr. Oseguera's post-conviction petition is affirmed.

---

[18] *See Gressman*, 2013 UT 63, ¶ 45; *Winward*, 2012 UT 85, ¶ 9; *Johnson v. State*, 2011 UT 59, ¶ 9 n.6, 267 P.3d 880.

[19] *Low*, 2008 UT 58, ¶ 19; *Pinder*, 2005 UT 15, ¶ 45, 114 P.3d 551; *Holgate*, 2000 UT 74, ¶ 11.

[20] *Pinder*, 2005 UT 15, ¶ 45.

[21] *Id.*

[22] *See Cruz*, 2005 UT 45, ¶ 36 n.6; *Schefski ex rel. Coleman v. Stevens*, 2000 UT 98, ¶ 9, 17 P.3d 1122; *State v. Pledger*, 896 P.2d 1226, 1229 n.5 (Utah 1995).

## II. THE DISTRICT COURT DID NOT ERR WHEN IT DENIED MR. OSEGUERA'S PETITION FOR A WRIT OF CORAM NOBIS

¶ 17   The district court denied Mr. Oseguera's petition for a writ of coram nobis.  Mr. Oseguera argues that the district court erred when it denied this petition because this case presents "special circumstances."  Particularly, Mr. Oseguera argues the district court should have recognized that an exception to the PCRA is warranted given the gravity of immigration consequences as recognized in *Padilla*.[23]  We disagree that the claimed exception is warranted here.

¶ 18   The Utah Supreme Court has "original jurisdiction to issue all extraordinary writs," and "appellate jurisdiction over all other matters to be exercised as provided by statute, and power to issue all writs and orders necessary for the exercise" of jurisdiction "or the complete determination of any cause."[24]  A writ of coram nobis "is an ancient common law writ that exists to correct fundamental errors which render a criminal proceeding irregular and invalid,"[25] or to "set[ ] aside a judgment which for a valid reason should never have been rendered."[26]  The writ of coram nobis, however, "is not merely another avenue of appeal."[27]  Rather, it "is an extraordinary writ; and an extraordinary remedy . . . should not be granted in the ordinary case."[28]

¶ 19   In *State v. Rees*, we addressed whether the writ of coram nobis was available as a remedy to a defendant who claimed his

---

[23] *Padilla v. Kentucky*, 559 U.S. 356, 365–66 (2010).

[24] UTAH CONST. art. VIII, § 3.

[25] *State v. Rees*, 2005 UT 69, ¶ 6 n.1, 125 P.3d 874 (internal quotation marks omitted).

[26] *Manning v. State*, 2005 UT 61, ¶ 13 n.2, 122 P.3d 628 (internal quotation marks omitted).

[27] *Garcia v. State*, 843 N.W.2d 345, 348 (S.D. 2014) (alteration in original) (internal quotation marks omitted).

[28] *United States v. Denedo*, 556 U.S. 904, 917 (2009) (alteration in original) (internal quotation marks omitted).

appeal was "defectively prosecuted because his appellate counsel was ineffective."[29]  We noted that "[i]f the PCRA provides . . . an adequate remedy at law," then a defendant "is not entitled to secure extraordinary relief but must instead pursue his PCRA remedy."[30]  Utah Code section 78B–9–102(1) provides that the PCRA "establishes the sole remedy for any person who challenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies," and "replaces all prior remedies for review, including extraordinary or common law writs."  The PCRA provided an adequate remedy to Mr. Oseguera.  Mr. Oseguera was granted an evidentiary hearing under the PCRA to determine whether his claim was time barred, and the district court denied his claim.  He now attempts to bring a new claim, which we decline to review on the merits because it was unpreserved.[31]  Because Mr. Oseguera had a remedy available to him through the PCRA, a remedy he sought, we affirm the district court's denial of his writ of coram nobis.

## CONCLUSION

¶ 20  Mr. Oseguera failed to preserve the argument he now makes on appeal.  Mr. Oseguera had a statutory remedy available to him and thus is not entitled to secure extraordinary relief.  Therefore, we affirm the district court's dismissal of both Mr. Oseguera's PCRA petition and his petition for a writ of coram nobis.

---

[29] 2005 UT 69, ¶ 9.

[30] *Id.* ¶ 16.

[31] *See supra* Part I.