**2017 UT App 93**

## THE UTAH COURT OF APPEALS

STEVEN J. GRAY,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20150431-CA
Filed June 8, 2017

Fourth District Court, Provo Department
The Honorable Claudia Laycock
No. 140400748

Steven J. Gray, Appellant Pro Se

Sean D. Reyes and Erin Riley, Attorneys for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES KATE A. TOOMEY and JILL M. POHLMAN concurred.

VOROS, Judge:

¶1     Steven J. Gray appeals the postconviction court's order granting summary judgment in favor of the State on his petition for relief under the Post-Conviction Remedies Act (PCRA). We affirm.

### BACKGROUND

¶2     After consuming cocaine and alcohol for days, Gray stabbed his girlfriend 67 times and mutilated her body. He then moved her body to the bathroom, cleaned and secured the residence, and fled. He later walked into a police station in another state and confessed to the crime. Gray described the crime as a "fatal result[] of his acts of passion."

¶3     The State charged Gray with aggravated murder, a capital felony; object rape, a first degree felony; mayhem, a second degree felony; obstruction of justice, a second degree felony; and abuse or desecration of a human body, a third degree felony. The information advised Gray that the State intended to seek the death penalty. Gray was assigned a team of four attorneys as his counsel.

¶4     Gray had a history of drug abuse and reported to his counsel that he suffered from anxiety, depression, and post-traumatic stress disorder. His counsel obtained his mental health records from various correctional and health institutions. They also retained a mitigation expert, who interviewed Gray's friends and family members. This investigation uncovered a childhood and adolescent history of physical, emotional, and sexual abuse.

¶5     Pursuant to a plea agreement, the State amended the information and agreed not to seek the death penalty. The amended information charged Gray with aggravated murder, a first degree felony; mayhem, a second degree felony; and abuse or desecration of a human body, a third degree felony. Gray pleaded guilty to all three counts. He was sentenced to life in prison without parole. He did not appeal.

¶6     Gray later filed a petition for postconviction relief, alleging that his counsel were ineffective for "failing to investigate [his] extensive history of mental illness as a defense" and for failing "to tell [him] of possible defenses, such as temporary mental insanity, extreme emotional distress, etc." Gray argued that, but for his counsel's deficient performance, he would have proceeded to trial and presented a "viable defense of insanity and/or extreme emotional distress manslaughter." The State moved for summary judgment. The postconviction court granted the State's motion.

ISSUE AND STANDARD OF REVIEW

¶7    Gray contends on appeal that the postconviction court erred in granting the State's motion for summary judgment and denying his petition for postconviction relief. We review a postconviction court's grant of summary judgment for correctness. *Honie v. State*, 2014 UT 19, ¶ 28, 342 P.3d 182. "We affirm a grant of summary judgment when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Ross v. State*, 2012 UT 93, ¶ 18, 293 P.3d 345 (citation and internal quotation marks omitted).

ANALYSIS

¶8    Gray contends that his trial counsel were ineffective in two ways—first, for not investigating his history of mental illness, and second, for not informing him of the defenses of insanity and extreme emotional distress.[1] Gray asserts that, absent his counsel's ineffectiveness, he would have proceeded to trial and presented a viable defense to the charge of aggravated murder.[2]

---

1. As explained below, extreme emotional distress is no longer a defense under Utah law, *see infra* ¶ 18, although it may function as a mitigating circumstance, *see generally State v. Scott*, 2017 UT App 74.

2. Gray's appellate briefs also identify multiple issues not raised or ruled on in the postconviction court. Claims "not raised before the [postconviction court] may not be raised on appeal." *Oseguera v. State*, 2014 UT 31, ¶ 10, 332 P.3d 963 (citation and internal quotation marks omitted). "An issue is preserved for appeal when it has been presented to the district court in such a

(continued…)

¶9     Under the PCRA, "a person who has been convicted and sentenced for a criminal offense may file an action . . . for post-conviction relief to vacate or modify the conviction or sentence" on the ground that "the petitioner had ineffective assistance of counsel in violation of the United States Constitution." Utah Code Ann. § 78B-9-104(1)(d) (LexisNexis 2012). If the State files a motion for summary judgment, it bears "the initial burden of showing that it is entitled to judgment and that there is no genuine issue of material fact that would preclude summary judgment in its favor." *See Menzies v. State*, 2014 UT 40, ¶ 81, 344 P.3d 581 (brackets, citation, and internal quotation marks omitted). Once the State makes that showing, the burden shifts to the petitioner to support the claim of ineffective assistance of counsel. *See id.* To meet this burden, the petitioner "must set forth specific facts showing that there is a genuine issue for trial." *See id.* (citation and internal quotation marks omitted).

¶10     To succeed on a claim of ineffective assistance of counsel, a petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Nelson*, 2015 UT 62, ¶ 12, 355 P.3d 1031. To show deficient performance, the petitioner must demonstrate that counsel's performance "fell below an objective standard of

_____

(…continued)

way that the court has an opportunity to rule on it." *Id.* (brackets, citation, and internal quotation marks omitted). In addition, most of the new issues identified on appeal are asserted in a single sentence and lack record and legal support as required by rule 24(a)(9) of the Utah Rules of Appellate Procedure. Because these issues are neither preserved nor adequately briefed, they cannot support reversal on appeal. *See Oseguera*, 2014 UT 31, ¶¶ 10, 16. We thus do not address them. Instead, we address only Gray's preserved ineffective assistance of counsel claim.

reasonableness." *Strickland*, 466 U.S. at 688. The petitioner must also "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted).

¶11 To prove prejudice in the guilty plea context, a petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The petitioner must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). Further, a "defendant's mere allegation that he would have insisted on trial but for his trial counsel's errors, although necessary, is ultimately insufficient to entitle him to relief. Rather, we look to the factual circumstances surrounding the plea to determine whether defendant would have proceeded to trial." *United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002) (brackets, citation, and internal quotation marks omitted); *see Hill*, 474 U.S. at 59. And where, as here, "the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *See Hill*, 474 U.S. at 59.

## I. Deficient Performance

¶12 Gray contends that his counsel performed ineffectively by not investigating his extensive history of mental illness and not informing him of possible defenses such as extreme emotional distress and temporary mental insanity. The postconviction court concluded that "the record establishes that Gray's counsel were aware of and did investigate his history of mental illness."

The court also concluded that Gray "failed to establish that he could have properly asserted mental illness or insanity as a defense under the applicable law."

¶13    Gray has not demonstrated error in the postconviction court's ruling. In his opposition to the State's motion for summary judgment, Gray admitted that his counsel requested mental health records from a number of correctional and health institutions in the state of Washington, where Gray spent a significant portion of his life. Gray also admitted that his counsel retained a mitigation expert, who uncovered various details of Gray's history of mental illness. Finally, at sentencing, counsel told the court that Gray had a history of substance abuse and mental illness. Gray provided no evidence below, and points to none on appeal, showing that his trial counsel's investigation into his mental health history "fell below an objective standard of reasonableness." *See Strickland*, 466 U.S. at 688.

¶14    Nor has Gray established that he could have succeeded on a defense of insanity or extreme emotional distress under Utah law. Gray claims that had counsel informed him of these defenses, he would not have pleaded guilty but would have proceeded to trial.

¶15    First we address the defense of insanity. Gray was charged with aggravated murder—intentionally or knowingly causing the death of another human being incident to an episode during which he also committed the crime of abuse or desecration of a dead human body. *See* Utah Code Ann. § 76-5-202(1)(e) (LexisNexis Supp. 2016). "It is a defense to a prosecution under any statute or ordinance that the defendant, as a result of mental illness, lacked the mental state required as an element of the offense charged." *Id.* § 76-2-305(1)(a). This defense is narrow; it applies only where the defendant "did not have the requisite mens rea of the alleged crime." *State v. Herrera*, 895 P.2d 359, 362 (Utah 1995). Thus, if an individual kills

someone "thinking that he is merely squeezing a grapefruit, [the individual] does not have the requisite mens rea for murder" and qualifies for the insanity defense under the statute. *See id.* Gray provided no evidence below, and points to none on appeal, to suggest that when he murdered his girlfriend, he did not know he was killing a human being or otherwise lacked the mental state required for the crime of aggravated murder.

¶16    Moreover, a person who asserts a defense of insanity and is "under the influence of voluntarily consumed, injected, or ingested alcohol, controlled substances, or volatile substances at the time of the alleged offense is not excused from criminal responsibility on the basis of mental illness if the alcohol or substance caused, triggered, or substantially contributed to the mental illness." Utah Code Ann. § 76-2-305(3). Gray admitted to using an excessive amount of cocaine in the days leading up to the murder and stated that he was drunk at the time he committed the crime. Gray's voluntary intoxication would have presented an additional hurdle to presenting a successful insanity defense.

¶17    In sum, Gray has not shown that an insanity defense "likely would have succeeded at trial." *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

¶18    Gray next alleges that his counsel performed deficiently because they failed to inform him of the "defense" of extreme emotional distress. Extreme emotional distress no longer exists as an affirmative defense in Utah. *See Ross v. State*, 2012 UT 93, ¶ 27 n.19, 293 P.3d 345 ("This section of the Utah Code has since been revised to eliminate the extreme emotional distress defense."). Gray could have raised it only as special mitigation in an effort to reduce a conviction of aggravated murder to murder. *See* Utah Code Ann. § 76-5-205.5 (LexisNexis 2012). The special mitigation statute places on the defendant the burden of proving

special mitigation by a preponderance of the evidence. *See id.* § 76-5-205.5(5)(a); *State v. Drej*, 2010 UT 35, ¶ 17, 233 P.3d 476.

¶19    "Special mitigation exists when the actor causes the death of another or attempts to cause the death of another . . . under the influence of extreme emotional distress for which there is a reasonable explanation or excuse." Utah Code Ann. § 76-5-205.5(1)(b). "This standard requires a trier of fact to put herself in the shoes of a reasonable person in the defendant's situation to determine whether the defendant's reaction to a series of events was reasonable. The standard is . . . whether a reasonable person facing the same situation would have reacted in a similar way." *State v. White*, 2011 UT 21, ¶ 37, 251 P.3d 820. However, "emotional distress does not include . . . distress that is substantially caused by the defendant's own conduct." Utah Code Ann. § 76-5-205.5(3)(b).

¶20    Special mitigation also exists when the defendant causes the death of another under circumstances that are not legally justified, but the actor "acts under a delusion attributable to a mental illness" and "the defendant's actions, in light of the delusion, were reasonable from the objective viewpoint of a reasonable person." *Id.* § 76-5-205.5(1)(a)(i), (iii). However, a defendant "who was under the influence of voluntarily consumed, injected, or ingested alcohol, controlled substances, or volatile substances . . . may not claim mitigation . . . on the basis of mental illness if the alcohol or substance caused, triggered, or substantially contributed to the mental illness." *Id.* § 76-5-205.5(2).

¶21    Gray was in no position to take advantage of either variant of special mitigation. Gray provided no evidence below, and points to none on appeal, to suggest that he acted under extreme emotional distress, not substantially caused by his own conduct, for which there was a reasonable explanation or excuse. *See id.* § 76-5-205.5(1)(b), (3)(b). Gray explained that he killed his

girlfriend in a "heat of passion" after seeing her "walking toward him nude." Based on his own account, Gray could not at trial have proven by a preponderance of the evidence that a reasonable person "facing the same situation would have reacted in a similar way." *See White*, 2011 UT 21, ¶ 37. Nor has Gray pointed to any evidence to suggest that he acted "under a delusion attributable to a mental illness" and that his "actions, in light of the delusion, were reasonable from the objective viewpoint of a reasonable person." Utah Code Ann. § 76-5-205.5(1)(a)(i), (iii). In sum, Gray has not shown that his claim of special mitigation "likely would have succeeded at trial." *See Hill*, 474 U.S. at 59.

¶22 Accordingly, Gray cannot establish that his trial counsel's actions "fell below an objective standard of reasonableness." *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). Nor has he "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *See id.* at 689 (citation and internal quotation marks omitted).

¶23 Furthermore, over all of counsel's actions hung the specter of the death penalty. Had Gray gone to trial, given his voluntary confession and the horrific nature of the crime, he would likely have been convicted of aggravated murder and may well have been sentenced to death. He was, figuratively speaking, "[s]tanding on the gallows with [his] head in a noose." Bob Dylan, Things Have Changed (Columbia Records 1999). Given what Gray describes as his "keen and unrefuted desire to avoid the death sentence," counsel's "strategy designed to avoid the death penalty" was far from unreasonable, *see Honie*, 2014 UT 19, ¶ 68. On the contrary, counsel's "recommendation that [Gray] plead guilty in order to avoid a possible death sentence was objectively reasonable," given the weight of the "strong, admissible evidence from which the State could prove to a jury that [Gray] was guilty." *See Rhinehart v. State*, 2012 UT App 322,

¶ 8, 290 P.3d 921 (citations and internal quotation marks omitted).

## II. Prejudice

¶24 Gray asserts that, but for his counsel's deficient performance, he would have proceeded to trial and presented a viable defense. The postconviction court concluded that "based on the undisputed facts and the law Gray cannot establish prejudice." We agree.

¶25 Again, Gray must establish "that a decision to reject the plea bargain would have been rational under the circumstances," *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010), an inquiry that depends "largely on whether the affirmative defense likely would have succeeded at trial," *see Hill*, 474 U.S. at 59. But Gray cannot show that rolling the dice at trial would have been a rational decision. The evidence against him was overwhelming. He confessed to police. The postconviction court aptly referred to the "truly horrifying and gruesome evidence at the scene of the crime." And Gray admitted to drug and alcohol use immediately preceding the murder. As the postconviction court explained, the State "had a very strong case and the likelihood of conviction at trial was very high."

¶26 With damning evidence against him, no plausible defenses, and facing a possible death sentence, Gray cannot demonstrate that "a decision to reject the plea bargain would have been rational under the circumstances." *See Padilla*, 559 U.S. at 372; *see also Rhinehart*, 2012 UT App 322, ¶ 9, (concluding that the defendant's assertions that she was coerced into pleading guilty were unavailing because she could not "demonstrate that going to trial 'would have been rational under the circumstances' considering the weight of the inculpatory evidence against her" (quoting *Padilla*, 559 U.S. at 372)). Accordingly, the postconviction court correctly concluded that, on this record, Gray could not establish prejudice.

CONCLUSION

¶27    In sum, Gray failed to meet his burden to "set forth specific facts showing that there is a genuine issue for trial" on his claim of ineffective assistance of counsel. *See Menzies v. State*, 2014 UT 40, ¶ 81, 344 P.3d 581 (citation and internal quotation marks omitted). Gray could not establish that his counsel rendered deficient performance, nor that any alleged deficient performance prejudiced him. The postconviction court correctly concluded that the State was entitled to judgment as a matter of law on both issues. Because "the record shows that there is no genuine issue as to any material fact and that the [State] is entitled to judgment as a matter of law," we affirm the decision of the postconviction court. *See Ross v. State*, 2012 UT 93, ¶ 18, 293 P.3d 345 (citation and internal quotation marks omitted).

———————