**2022 UT App 21**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
BRUCE MATTHEW AITKEN,
Appellant.

Opinion
No. 20200420-CA
Filed February 17, 2022

Fourth District Court, Nephi Department
The Honorable Anthony L. Howell
No. 171600173

Emily Adams, Freyja Johnson, and Cherise M.
Bacalski, Attorneys for Appellant

Sean D. Reyes and Jeffrey D. Mann, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and JILL M. POHLMAN
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1      Based on the advice of his attorney, Bruce Matthew Aitken pleaded guilty to three counts of attempted forcible sexual abuse and two counts of sexual battery. Prior to sentencing, Aitken moved to withdraw his guilty pleas based on a claim that his defense counsel (Plea Counsel) provided constitutionally ineffective assistance by advising him to plead guilty without sufficient investigation. The district court was unpersuaded by Aitken's claim and denied the motion to withdraw. Aitken appeals, and we affirm.

BACKGROUND

¶2      Aitken was employed as a nurse at a rehabilitation center where he supervised several certified nursing assistants (CNAs). According to Aitken, there existed a friendly and playful atmosphere at the workplace between the other employees and him. Despite the supposedly friendly atmosphere, six CNAs alleged Aitken had engaged in inappropriate sexual conduct while at work, which included touching their breasts both on top of and under their clothing on several occasions and intentionally walking in on one CNA while she used the restroom. None of these incidents was reported to management at the time they occurred, but the CNAs created a "buddy system" so they could avoid being left alone with Aitken. After Aitken grabbed a CNA by the throat while simultaneously groping her breast, the CNA reported Aitken's behavior to administrators, who reported the incident to law enforcement. As part of the investigation, an officer spoke with Aitken as well as several CNAs who had come forward with reports of Aitken's abuse. Aitken admitted to grabbing one CNA by the throat and "inadvertently" groping another's breast during the reenactment of a patient's fall.

¶3      The State filed charges against Aitken: four counts of forcible sexual abuse, eighteen counts of sexual battery, and one count of sexual abuse of a minor. At the preliminary hearing, the investigating officer and five of the CNAs testified and underwent cross-examination. Aitken's admissions to the investigating officer were also entered into evidence.

¶4      With the assistance of Plea Counsel, Aitken engaged in plea negotiations with the State and ultimately pleaded guilty to three counts of attempted forcible sexual abuse and two counts of sexual battery. In exchange, the State agreed to dismiss the remaining charges and to recommend that no prison term be imposed. During the change of plea hearing, in support of his pleas, Aitken executed and submitted a Statement of Defendant

in Support of Guilty Plea and Certificate of Counsel (the Statement), wherein he acknowledged that he had enough time to consult with Plea Counsel, was "satisfied with his advice and assistance," and understood that by pleading guilty, he would be admitting that he committed the crimes listed in the Statement. The district court engaged in the colloquy required under rule 11 of the Utah Rules of Criminal Procedure to ensure Aitken's guilty pleas were entered into knowingly, voluntarily, and with the advice and assistance of counsel. Aitken did not challenge the factual recitation contained in the Statement or raise any uncertainties or concerns about Plea Counsel's representation. Afterward, the court accepted and entered Aitken's pleas of guilty.

¶5 Before the sentencing hearing, and with the assistance of new counsel, Aitken filed a motion to withdraw his guilty pleas. He argued that his pleas were not knowing and voluntary because Plea Counsel had performed ineffectively by not "diligently investigat[ing]" the case and locating a potential defense witness (Witness). As a part of his motion, Aitken provided a report of an interview between a private investigator and Witness wherein Witness claimed that she was never contacted by Plea Counsel and explained what she would have said had she been contacted. Witness, Aitken's former co-worker, averred that if called at trial, she would testify that she never saw a single incident take place similar to what the CNAs were alleging. She would also testify that she had learned that a nurse supervisor at the rehabilitation center had called the employees for a meeting regarding Aitken, "pressured" the employees, and asked "all of them to think of any instances where [Aitken] may have been inappropriate and report it." According to Witness, the nurse supervisor told those attending the meeting "they were either with their co-workers or against them." An employee from the rehabilitation center told Witness that she felt "coerced" to report misconduct based on the nurse supervisor's statements during the meeting. Witness told the investigator that she felt the nurse supervisor's pressure to

report abuse was "completely inappropriate." Further, had she been called at trial, Witness would provide commentary on the personal lives of the CNAs and state that she had never felt unsafe around Aitken and that he was completely innocent.

¶6     Based on Witness's information, Aitken argued to the district court that had he known of Witness's statement, he would not have pleaded guilty but would have gone to trial instead. But nothing in Witness's statement demonstrated that she was present at the time of the assaults, that Witness was employed at the rehabilitation center during the relevant time period, or whether Aitken made Plea Counsel aware of Witness and her potential testimony. In addition, some of Witness's proffered testimony contradicted Aitken's own admissions; she claimed that the fall reenactment episode did not involve the CNA who reported it, while Aitken admitted that it did involve that CNA.

¶7     After briefing by the parties, the district court denied Aitken's motion to withdraw his guilty pleas, finding that Aitken had failed to prove either prong of an ineffective assistance of counsel claim as required by *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, the court concluded that there was no deficient performance because Plea Counsel's investigation uncovered at least two witnesses who gave statements and evidence in favor of Aitken. The district court stated,

> That [Plea Counsel] did not find one witness . . . is not deficient. Particularly when that statement is contradicted by the Defendant's own admissions, contains hearsay and other inadmissible statements, and claims pressure to write what had happened (not false statements) by women who did not provide witness statements.

The district court also found Plea Counsel did not perform deficiently because effective counsel "would know that a wise defense attorney would not have [their] trial strategy include a witness who has critical statements which are contradicted by the Defendant's own video recorded statements."

¶8      The district court also concluded that even if Plea Counsel performed deficiently in failing to find Witness, there was no prejudice to Aitken because the "strength of the evidence against Defendant [was so] substantial" that it would have been "irrational" for Aitken to reject the State's plea offer:

> As set forth in the preliminary hearing, there were six women who testified as to [D]efendant's sexual abuse. The emotional toll on some of the witnesses was apparent in the court room and would be noticed by a jury. Defendant was present for the hearing and heard the testimony, saw his capable attorney make efforts to poke holes in the witnesses' testimonies and their continued affirmation of his guilt. [Plea Counsel] . . . brought up that the witnesses were told by administration to disclose the abuse. Defendant's recorded admissions were admitted establishing that he grabbed [one CNA] by the throat, unlocked the women's bathroom door and walked in on her without a valid reason, and grabbed the breast of [another CNA] during the demonstrated fall. This evidence is substantial compared to one witness who provides contradictory statements.

Further, the court found no prejudice because Aitken "received the benefit of having twenty serious charges dismissed and the agreement that the State would stipulate to no prison" by accepting the plea offer.

ISSUE AND STANDARDS OF REVIEW

¶9     Aitken challenges the district court's denial of his motion to withdraw his guilty plea, arguing that Plea Counsel provided ineffective assistance of counsel by advising him to accept the State's offer and plead guilty without conducting a thorough investigation and without the benefit of Witness's information. "We review the denial of a motion to withdraw a guilty plea under an abuse of discretion standard, incorporating a clearly erroneous standard for findings of fact and reviewing questions of law for correctness." *State v. Walker*, 2013 UT App 198, ¶ 8, 308 P.3d 573 (quotation simplified). And when a defendant seeks to withdraw a guilty plea based on a claim of ineffective assistance of counsel, we apply the standard of review set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). That is, "ineffective assistance of counsel claims present a mixed question of fact and law." *State v. Templin*, 805 P.2d 182, 185–86 (Utah 1990). "We review a trial court's application of the law to the facts for correctness and, if applicable, we review the court's findings of fact for clear error." *State v. Torres-Orellana*, 2021 UT App 74, ¶ 26, 493 P.3d 711, *cert. granted* 493 P.3d 711 (Utah 2021). When we review an ineffective assistance claim that has been considered first by the district court, we review the district court's decision nondeferentially. *See Menzies v. Galetka*, 2006 UT 81, ¶¶ 4, 56–58, 150 P.3d 480 ("[I]t is unnecessary to grant deference to the district court in the minority of cases where an ineffective assistance of counsel claim is first raised before that court.").

ANALYSIS

¶10   Before the district court, Aitken alleged that Plea Counsel's failure to undertake an adequate investigation before advising him to plead guilty precluded him from entering his

pleas knowingly and voluntarily.[1] Aitken sought to withdraw his guilty pleas after learning about Witness's potential testimony. Under Utah law, a criminal defendant is allowed to withdraw a guilty plea prior to sentencing "upon leave of the court and a showing that it was not knowingly and voluntarily made." Utah Code Ann. § 77-13-6(2)(a) (LexisNexis 2017). Aitken argues that the district court erred in rejecting his claim of ineffective assistance of counsel as a basis for withdrawing his guilty pleas. Because Aitken's argument—that he did not enter his pleas knowingly and voluntarily—is predicated solely on his claim of ineffective assistance of counsel, our determination of Aitken's ineffective assistance of counsel claim essentially resolves his contention that the district court erred in denying his motion to withdraw. *See State v. Momoh*, 2018 UT App 180, ¶ 10, 436 P.3d 334.

¶11 "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of

---

1. Aitken spends several pages of his brief arguing that the district court misapplied *State v. Archuleta*, 2019 UT App 136, 449 P.3d 223, in denying his motion. In its order, the district court found Aitken failed to prove either element of the *Strickland* test and added, as a supplemental reason for denying the motion, that this court's decision in *Archuleta* precluded a post-plea discovery of evidence from supporting the withdrawal of a plea. Aitken asserts that this case is distinguishable because his argument was that Plea Counsel should have undertaken a more thorough investigation and discovered Witness prior to advising him to plead guilty, whereas the *Archuleta* defendant never asserted that his trial counsel could or should have discovered the evidence earlier. Because we affirm the district court's determination that Aitken suffered no prejudice based on Plea Counsel's alleged deficiencies and that Aitken's plea was knowing and voluntary based on the advice of Plea Counsel, we need not address this argument.

counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quotation simplified). The "two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58; *see also Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). To demonstrate ineffective assistance of counsel, a defendant must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hill*, 474 U.S. at 57 (quotation simplified); *see also State v. Scott*, 2020 UT 13, ¶ 28, 462 P.3d 350.

¶12    In the context of guilty pleas, the first inquiry is whether counsel performed deficiently. *Hill*, 474 U.S. at 58. The second inquiry is whether there was a reasonable probability that, but for counsel's errors, the defendant "would not have pleaded guilty and would have insisted on going to trial." *Arriaga v. State*, 2020 UT 37, ¶ 32, 469 P.3d 914 (quotation simplified); *see also Hill*, 474 U.S. at 59. "A defendant's inability to establish either element defeats a claim for ineffective assistance of counsel." *State v. Cruz*, 2020 UT App 157, ¶ 17, 478 P.3d 631 (quotation simplified); *see also Strickland*, 466 U.S. at 700. Where it is readily apparent from the record that a defendant suffered no prejudice, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697. We take that approach here.

¶13    Aitken argues that but for Plea Counsel's error in not identifying and interviewing Witness, there was "a reasonable probability" that he would not have accepted the State's offer

and pleaded guilty, but would have instead gone to trial. But a defendant must do more than simply make such a claim. Here, Aitken must affirmatively establish prejudice by proving "that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *see also Arriaga*, 2020 UT 37, ¶ 32; *Gray v. State*, 2017 UT App 93, ¶ 11, 400 P.3d 1081 (stating that "a defendant's mere allegation that he would have insisted on trial but for his trialcounsel's errors . . . is ultimately insufficient to entitle him to relief" (quotation simplified)). "When making this determination, [we] review the strength of the prosecutor's case as the best evidence of whether a defendant in fact would have changed his plea and insisted on going to trial." *State v. Walker*, 2013 UT App 198, ¶ 42, 308 P.3d 573 (quotation simplified).

¶14 We share the district court's skepticism that Witness's potential testimony would have so altered the strength of the State's case or strengthened Aitken's defense in any significant way such that Aitken would have insisted on going to trial.

¶15 Importantly, Aitken did not establish that Witness had firsthand knowledge of the specific acts of abuse. Witness's statement about a nurse supervisor "pressur[ing]" employees to file reports against Aitken was inadmissible hearsay, as Witness was not present at the alleged meeting. Witness's information about the allegations of abuse also would have contradicted Aitken's own recorded admissions. Witness claimed the fall reenactment did not involve the particular CNA who reported the incident, while Aitken admitted that it did involve that person and that Aitken had groped the CNA during their interaction, albeit "inadvertently." Further, Witness's subjective assessment that she never felt unsafe around Aitken, her assertion that he was completely innocent, and her commentary on the habits and personalities of the CNAs were simply her opinions and would have had little impact on the jury's determination of whether the abuse had occurred.

¶16    Moreover, the State presented a strong case at the preliminary hearing. Five of the six CNAs offered in-person testimony about Aitken's sexual abuse, each providing mutually corroborating evidence. The district court noted the "emotional toll" of their testimony, which "was apparent in the court room and would be noticed by a jury" should the case go to trial, and described their testimony as "substantial" and "overwhelming." Aitken's own admissions were also entered into evidence. The district court found that Aitken "was present for the [preliminary] hearing and heard the testimony, saw his capable attorney make efforts to poke holes in the witnesses' testimonies and their continued affirmation of his guilt."

¶17    We are also not convinced that rejecting the State's plea bargain would have been rational under the circumstances of this case. *See Padilla*, 559 U.S. at 372. After hearing the evidence presented at the preliminary hearing, the district court bound over Aitken on twenty-five separate felony and misdemeanor counts, including four second-degree felony charges. As a part of the plea bargain, the State agreed to let Aitken plead guilty to three third-degree felony counts and two misdemeanor counts—a significant reduction from the number of the original charges and the severity of those charges. In addition, the State agreed to dismiss the remainder of the charges and to recommend that no prison term be imposed. Thus, Aitken has not persuaded us that there is a reasonable probability that he would not have accepted the offered plea bargain because pleading guilty significantly reduced his exposure to potential incarceration and other penalties.

¶18    In sum, even if Plea Counsel's pre-plea investigation had discovered Witness, we agree with the district court that Witness's information did not diminish the strength of the State's case in such a way that it would have been rational under the circumstances for Aitken to reject the State's plea offer. Ultimately, the district court correctly determined that Aitken failed to prove the prejudice prong of the *Strickland* ineffective

assistance of counsel test. He has therefore failed to establish that any lack of investigation by Plea Counsel rendered his plea unknowing and involuntary. Accordingly, he cannot show that the district court abused its discretion by not permitting him to withdraw his guilty plea. *See* Utah Code Ann. § 77-13-6(2)(a) (LexisNexis 2017) (requiring a showing that a plea "was not knowingly and voluntarily made" to support a plea withdrawal).

## CONCLUSION

¶19 We agree with the district court that Aitken failed to demonstrate that based on Witness's information, it would have been rational for him to reject the plea deal offered by the State and insist on going to trial. Accordingly, the district court correctly assessed Aitken's ineffective assistance of counsel claim and did not abuse its discretion in denying Aitken's motion to withdraw his guilty pleas. As a result, we affirm.

———————