**2019 UT App 136**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ISAK JO TATSU ARCHULETA,
Appellant.

Opinion
No. 20180170-CA
Filed August 8, 2019

Second District Court, Ogden Department
The Honorable W. Brent West
The Honorable Jennifer L. Valencia
No. 161901927

Randall W. Richards, Attorney for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES KATE APPLEBY and JILL M. POHLMAN concurred.

HARRIS, Judge:

¶1      Isak Jo Tatsu Archuleta pled guilty to burglary and aggravated assault. Later, on the day scheduled for his sentencing, Archuleta attempted to withdraw his plea, but the district court refused to allow him to do so. Archuleta now appeals that decision, and in addition he claims that his attorney provided ineffective assistance. We reject Archuleta's arguments and affirm his convictions.

BACKGROUND

¶2      On June 5, 2016,[1] two men and a woman—armed with handguns—knocked on the door of a residence. When someone opened the door, the three individuals forced their way inside and held seven adults at gunpoint. The female intruder ordered an adult woman upstairs and stole approximately $400 in cash and a half-ounce of methamphetamine from her. When this woke three children sleeping upstairs, the female intruder ordered the children back into their room at gunpoint.

¶3      Meanwhile, the two male intruders stole cell phones, a computer, and a backpack from the other adults. One of the males—who the State believed was Archuleta—ordered one adult to electronically transfer money into his bank account, but when the individual could not do so, the male intruder punched and then repeatedly kicked him in the face. The two male intruders also assaulted two others, punching, kicking, and striking them in the face with their handguns.

¶4      While the two male intruders wore bandannas over their faces to conceal their identities, the female intruder did not, and she was recognized and identified as Deana Smith by five of the adult victims. When Smith was arrested two months after the incident, she identified Archuleta and Justin Martinez as the two male intruders.

¶5      Based on Smith's identification of him, Archuleta was later arrested and charged with two first-degree felonies

---

1. Because no trial was ever held in this case, and because Archuleta did not admit any facts, we draw our description of the events of the June 5 incident from the State's probable cause statement and from the State's description, at the plea hearing, of the evidence it intended to present at trial. It bears noting that the facts as described here have never been proved or admitted.

(aggravated burglary and aggravated robbery) and three second-degree felonies (possession of a firearm by a restricted person and two counts of aggravated assault). After relatively lengthy pretrial proceedings during which the State proved unable to locate anyone other than Smith who could place Archuleta at the crime scene, the State offered to dismiss the remaining charges if Archuleta would agree to plead guilty to one second-degree felony (an amended charge of burglary) and one third-degree felony (an amended charge of aggravated assault). The State also offered to allow Archuleta to enter an *Alford* plea[2] in which he would stop short of admitting guilt, and in addition pledged to recommend to the sentencing judge that Archuleta be placed on probation rather than sent to prison.

¶6    Archuleta agreed to take the deal, and appeared in court on November 15, 2017 to enter his plea. At the outset of the proceedings, after being apprised of the outlines of the proposed plea, the district court—personified at the time by Judge West—inquired as to why the State was recommending probation for

_____

2. An *Alford* plea is a type of guilty plea in which

> "a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty." These pleas allow courts to impose "a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence."

*State v. Gardner*, 2018 UT App 126, ¶ 9 n.5, 428 P.3d 58 (quoting *North Carolina v. Alford*, 400 U.S. 25, 35–36 (1970)); *see also State v. Ott*, 2010 UT 1, ¶ 9 n.2, 247 P.3d 344 (stating that, "[b]y entering an *Alford* plea, a defendant does not admit guilt" but instead "enters a guilty plea because he recognizes that a prosecutor has enough evidence to obtain a guilty verdict").

Archuleta after it had, in a companion case, previously recommended a prison sentence for Martinez. In response, the prosecutor acknowledged that "the evidence is a little different" in the two cases and that the evidence against Archuleta was not as strong as the evidence against Martinez.

¶7 Archuleta then proceeded to plead guilty in accordance with the agreement. First, his attorney explained to the district court that Archuleta maintained his innocence and was entering *Alford* pleas for the two amended charges. When the court inquired about the factual basis for the plea, the prosecutor proffered that Archuleta, along with the co-defendants, "entered the victim's residence" while "armed with weapons" and "stole some money," and in so doing he used weapons to inflict serious bodily injury upon the victim. Archuleta did not admit that these facts occurred; instead, his attorney noted that Archuleta agreed that these were "the facts that the State can prove," or at least that "they [think] they can prove."

¶8 The district court also conducted a plea colloquy, in which it explained that the charges to which Archuleta was pleading guilty carried the possibility of prison, but commented that "that's a heck of a lot better than all the charges that [Archuleta was] facing before [he] entered into this plea agreement." The court also asked Archuleta whether the plea was "a voluntary plea," and Archuleta answered in the affirmative. The court asked Archuleta if he was "doing this of [his] own free will," and Archuleta said he was. In addition, the court engaged in the following colloquy with Archuleta:

> Q: Are you under the influence of any alcohol or drugs, receiving any kind of medical treatment, taking any kind of prescriptive medications, suffering from any kind of mental illness? You're thinking clearly?
>
> A: Yes.

¶9     The court also asked Archuleta if he had read and understood the written plea agreement form, and Archuleta answered in the affirmative. In that form, Archuleta certified that he "was not under the influence of any drugs, medication, or intoxicants which would impair [his] judgment when [he] decided to plead guilty," and that he was "not presently under the influence of any drug, medication, or intoxicants which impair [his] judgment." His attorney also certified that Archuleta "fully understands the meaning of [the] contents" of the form, "and is mentally and physically competent." In addition, Archuleta certified that he understood that the sentencing judge was not bound by the terms of any sentencing recommendation made by the parties. After accepting Archuleta's guilty pleas, the district court set sentencing for December 27, 2017.

¶10     In late December, a few days before the scheduled sentencing hearing, Adult Probation and Parole (AP&P) issued a presentence investigation report for Archuleta, setting forth its recommendation that Archuleta be sentenced to prison. At the outset of the December 27 sentencing hearing, Judge West informed Archuleta that he was not inclined to follow the State's recommendation of probation, but was instead inclined to follow AP&P's prison recommendation. Hearing that statement, and perhaps aware that Judge West was scheduled to retire at the end of the year, Archuleta's counsel asked the court for a continuance so that he could "brief a couple of issues regarding sentencing." Judge West granted that request, and rescheduled Archuleta's sentencing for January 24, 2018.

¶11     In the meantime, Archuleta had been writing letters to the court in which he asserted various grievances. Among other things, Archuleta accused the prosecution of being unfair, described his co-defendant as unworthy of the bail he received, requested a speedy trial, asked to be let out of jail because his father was sick, took issue with AP&P's recommendations, asked to withdraw his plea, and maintained his innocence. In

these letters, Archuleta did not mention being intoxicated or under the influence at the plea hearing.

¶12    Upon Judge West's retirement, Archuleta's case was reassigned to Judge Valencia. At the January 24 hearing, Judge Valencia remarked that she too would be inclined to follow AP&P's sentencing recommendation, and Archuleta again sought and received a continuance.

¶13    At the beginning of Archuleta's third sentencing hearing, on February 7, 2018, Archuleta's attorney informed the court that Archuleta "does wish to withdraw his plea," but that counsel was "not able to find any grounds for that at this time." The attorney explained that Archuleta had "recently come across another inmate who has admitted to . . . [Archuleta's] portion of the crime in jail" and stated that he knew that inmate's identity, and asked the court for a continuance to allow prosecutors to investigate the individual. The State opposed the continuance, arguing that there were no grounds to withdraw the plea at this point, that Archuleta had always maintained his innocence, and that he had provided other names of possible suspects to the State in the past and none of those leads had panned out.

¶14    As the court began to explain that it did not see a basis for withdrawing the plea, Archuleta interrupted, explaining that about a week after entering his plea, he "told [his] lawyer that [he] was under the influence when [he] took the plea and . . . that there was proof [of] that in the jail," and that when he entered his plea, he "was in such a dream state that . . . [he] thought [he] was asleep." After listening to Archuleta's explanations about why he believed he should be able to withdraw his plea, which included a renewed claim of innocence and reiteration that he met someone in jail who admitted to the crime, the court informed Archuleta that "[t]here isn't [a] sufficient basis that's been presented as to why that plea should be withdrawn at this time." The court observed that "[t]here have been a number of

continuances in this case" but that it had not received any briefing on the issues raised by Archuleta. The court also noted that it did not find Archuleta's statements regarding his level of intoxication credible, because his plea was entered in open court, before Judge West and counsel, and because he had been incarcerated for more than a year at the time of his plea and therefore presumably would not have had ready access to substances that would render him "under the influence."

¶15    All the while, Archuleta continued to interrupt the court, attempting to argue his case, until the court asked his attorney for argument regarding Archuleta's sentence. Archuleta's attorney first acknowledged the arguments that Archuleta had made himself, stating as follows:

> [T]he issues [Archuleta] brings up are valid issues, but the issues themselves are ones that have to be brought up, frankly, post-sentencing. And I'll make sure they're brought up, and make sure his appellate case is turned over to the public defender to be filed. As far as the case itself, he does maintain that he did not do it.

Archuleta's attorney then argued for probation, pointing out that Archuleta had been in jail for "over a year and a half" and that he had been accepted into a drug treatment program in Salt Lake. After hearing from the prosecutor—who still recommended probation per the terms of the plea agreement—the court sentenced Archuleta to prison.[3]

_____

3. On February 10, 2018, three days after his sentencing, Archuleta obtained a notarized but unsworn statement from a witness who claimed that he had been peripherally involved in the burglary on June 5, 2016, and that the three other individuals involved—the ones who actually went into the house—were

(continued…)

ISSUES AND STANDARDS OF REVIEW

¶16   Archuleta now appeals his sentence, and asks us to address two issues. First, he argues that the district court erred by denying his oral motion to withdraw his guilty plea. We review a district court's ruling on a motion to withdraw a guilty plea for abuse of discretion. *State v. Ciccolelli*, 2019 UT App 102, ¶ 9. And "we will disturb the court's underlying findings of fact only if they are clearly erroneous." *Id.* (quotation simplified).

¶17   Second, Archuleta argues that his attorney was ineffective. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Ott*, 2010 UT 1, ¶ 16, 247 P.3d 344 (quotation simplified). In such a situation, "there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Beckering*, 2015 UT App 53, ¶ 18, 346 P.3d 672 (quotation simplified).

---

(…continued)
"Deana Bailey," a "Mexican" called "Jaybird," and a "white male" called "Sam." Archuleta made no attempt to bring this statement to the attention of the district court, but later filed it with this court in connection with a motion for remand, filed pursuant to rule 23B of the Utah Rules of Appellate Procedure. That motion was also accompanied by a copy of a document, purporting to be a notice of discipline from the Weber County Jail, reprimanding Archuleta for being in possession of a "syringe and needle" in his jail cell on December 1, 2017, some two weeks after his plea hearing. We previously denied Archuleta's rule 23B motion, and therefore neither the witness statement nor the jail write-up was ever made part of the record. In aid of a complete narrative, in this opinion we sometimes refer to the witness statement or the jail write-up in footnotes, by way of explaining why we denied the rule 23B motion.

ANALYSIS

I

¶18 Archuleta first argues that the district court erred by denying his motion—made orally at his sentencing hearing—to withdraw his guilty plea, asserting that the court "did not . . . investigate whether or not [he] was under the influence of illegal drugs . . . around the time of the entry of the plea." Archuleta insists that, after he raised the issue at the sentencing hearing, the district court was obligated to conduct an inquiry into his alleged intoxication at the plea hearing, and that the lack of a detailed inquiry is grounds for reversal. We disagree.

¶19 Under Utah law, a defendant may not withdraw a guilty plea unless the plea was "not knowingly and voluntarily made." Utah Code Ann. § 77-13-6(2)(a) (LexisNexis 2017); *see also State v. Ruiz*, 2012 UT 29, ¶ 32, 282 P.3d 998 (stating that, in light of amendments to Utah Code section 77-13-6, "judges may now grant a motion to withdraw *only* when they determine that a defendant's plea was not knowingly and voluntarily entered"); *cf. State v. Alexander*, 2012 UT 27, ¶ 16, 279 P.3d 371 (stating that a guilty plea is "valid under the Due Process Clause of the U.S. Constitution only if it is made voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences" (quotation simplified)). The burden of making this showing rests with the defendant seeking to withdraw his plea. *See Alexander*, 2012 UT 27, ¶ 27 (stating that "the Plea Withdrawal Statute requires defendants to show that their pleas were not in fact knowingly and voluntarily made"); *State v. Ciccolelli*, 2019 UT App 102, ¶ 10 ("The burden of proof is on the defendant who must show either that he did not in fact understand the nature of the constitutional protections that he was waiving by pleading guilty, or that he had such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." (quotation

simplified)). A defendant cannot meet this burden simply by demonstrating noncompliance with rule 11 of the Utah Rules of Criminal Procedure. *See Alexander*, 2012 UT 27, ¶ 25 (stating that a district court's failure to comply with rule 11 is not, by itself, grounds to withdraw a guilty plea, "because compliance with rule 11 is not mandated by the Plea Withdrawal Statute or by the U.S. Constitution"); *see also* Utah R. Crim. P. 11(*l*) (stating that strict compliance with rule 11 is not necessary, and that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded").

¶20　Here, Archuleta has not met his burden of showing that his plea was not knowingly and voluntarily entered. At the plea hearing, Judge West asked Archuleta if he was thinking clearly, and he answered in the affirmative. Archuleta complains that the actual question posed was a compound question, asking both (a) if he was under the influence of any drugs, and (b) if he was thinking clearly. Archuleta notes that the first part of this question is best answered in the negative, while the second is best answered in the affirmative, and postulates that his affirmative answer might be considered responsive to the first part of the question rather than the second. While we certainly acknowledge that it would have been better for the district court to ask the two parts of the question separately, or at least wait for an audible answer[4] to the first part before proceeding to the second, when we consider the record as a whole we do not consider it unclear. The court also asked Archuleta plainly whether his plea was voluntary, and Archuleta clearly answered

---

4. It is possible that the district court elicited a non-verbal affirmative response (e.g., a nod) to the first part of the inquiry, and then proceeded to the second. We note that nods and shakes of the head are not picked up on an audio-based record, and therefore urge trial judges to make sure to elicit audible responses from witnesses and litigants.

in the affirmative. Moreover, the import of the two-part question about drug use was clear enough: it gave both Archuleta and his attorney the opportunity to inform the court if either of them thought that Archuleta was under the influence of mind-altering drugs or medication, or if either of them thought that Archuleta was not in a mental state conducive to entry of a felony guilty plea. Not only did neither of them seize that opportunity orally, but both certified in writing that Archuleta was of sufficiently sound mind that day to enter a plea. "'Solemn declarations in open court carry a strong presumption of verity.'" *Arriaga v. State*, 2018 UT App 160, ¶ 15, 436 P.3d 222 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)), *cert. granted*, 437 P.3d 1247 (Utah 2019). And although a "defendant's own assurances of his capacity are not conclusive, courts have commonly relied on the defendant's own assurance . . . that the defendant's mind is clear." *Oliver v. State*, 2006 UT 60, ¶ 13, 147 P.3d 410 (quotation simplified). Given Archuleta's own representations—both oral and written—to the district court at the plea hearing, the court was not obligated to investigate the matter further. *See State v. Powell*, 2015 UT App 250, ¶ 6 n.1, 361 P.3d 143 (stating that, where the defendant had "assured the court that he had not taken any drugs, alcohol, or medication prior to the hearing," and where "the court observed nothing in [the defendant's] demeanor that suggested impairment," the court "had no reason to suspect that [the defendant] might be impaired" and was therefore under no "obligation to engage in a more meaningful assessment of his competence at the time of the plea hearing").

¶21   We also have no reason to question Judge Valencia's conclusion that she found Archuleta's claims at the sentencing hearing less credible than his earlier representations. Archuleta did not raise the impairment issue with the district court—despite multiple opportunities to do so, and despite sending in several handwritten letters to the court—until February 2018, after he had learned that both Judge West and Judge Valencia were inclined to sentence him to prison instead of probation.

Judge Valencia also noted that, at the time he claimed to have been under the influence, Archuleta had been incarcerated for more than a year, and illegal drugs are presumably difficult to obtain when one is behind bars. While Archuleta claimed, at the sentencing hearing, to have evidence supporting his claim, he failed to submit any to the district court.[5]

¶22　Moreover, even if Archuleta had borne his burden—and he has not—of demonstrating that he had taken a drug of some kind on the day of his plea hearing, he has in any event not demonstrated that his alleged drug use resulted in him being impaired. We have recently observed that "the use of drugs alone does not render [a defendant] incompetent." *Ciccolelli*, 2019 UT App 102, ¶ 12. "Instead, it is 'the drug's *effect* and not the mere presence of the drug that matters.'" *Id.* (quoting *Oliver*, 2006 UT 60, ¶ 7); *see also State v. Beckstead*, 2006 UT 42, ¶ 21, 140 P.3d 1288 (upholding a district court's determination that a defendant who had consumed alcohol had entered a valid guilty plea); *Powell*, 2015 UT App 250, ¶¶ 7–8 (affirming the denial of a motion to withdraw a plea where the defendant had ingested drugs on the morning of the plea hearing but had failed to prove any actual mental impairment as a result). In order to meet his burden in this context, Archuleta "must show *how* his . . . ability to understand the plea agreement was impaired" by his alleged drug use. *See Ciccolelli*, 2019 UT App 102, ¶ 13 (emphasis added). Other than his general statement to the district court that he

---

5. Although not part of the record, even the jail write-up Archuleta submitted in connection with his rule 23B motion indicated only that he had drug paraphernalia—but not necessarily drugs—in his cell some two weeks *after* his plea hearing. Of course, the fact that Archuleta had paraphernalia in his cell on December 1, 2017 does not, on its own, support a claim that he was under the influence of drugs on or about November 15, 2017.

remembered being in a "dream state" at his plea hearing, he has not attempted to do so. Like the defendant in *Ciccolelli*, Archuleta has "provided no evidence of what drugs he used, when he used them, how long they would have stayed in his system, or how they would have affected his competency." *See id.* ¶ 14.

¶23   To meet his burden, Archuleta must have presented the district court with "objective evidence" that he was "so impaired by drugs when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea." *Powell*, 2015 UT App 250, ¶¶ 5, 7 (quotation simplified). When, as here, the only evidence a defendant puts forward are his own "self-serving statements," "this falls far short of carrying his burden of establishing that, during the plea hearing, he did not understand either the charges against him or the constitutional protections he was waiving by pleading guilty." *Ciccolelli*, 2019 UT App 102, ¶ 14 (quotation simplified). Because Archuleta has not carried his burden on appeal of demonstrating that his guilty plea was not knowingly and voluntarily made, we affirm the district court's decision to deny Archuleta's motion to withdraw his plea.

II

¶24   Second, Archuleta argues that his attorney provided ineffective assistance. "To succeed on a claim of ineffective assistance of counsel, a defendant must show both 'that counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'" *State v. Galindo*, 2017 UT App 117, ¶ 7, 402 P.3d 8 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). There is no "checklist for judicial evaluation of attorney performance," since such a list "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688–89. However, counsel does

have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. But this duty "does *not* require counsel to interview every possible relative or acquaintance or to fully investigate every potential lead." *Menzies v. State*, 2014 UT 40, ¶ 183, 344 P.3d 581. Rather, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

¶25    Specifically, Archuleta alleges that his attorney, post-plea, failed to investigate and follow up on two issues: (a) his claim that he was under the influence of drugs and therefore not in a position to enter a guilty plea on November 15, 2017, and (b) his claim that he did not participate in the June 2016 robbery. We discuss each of these matters, in turn.

A

¶26    Archuleta's first claim is that his attorney should have more thoroughly investigated the issue of whether Archuleta was under the influence of drugs when he entered his plea. We reject this claim because Archuleta has not carried his burden of demonstrating that his attorney performed deficiently with regard to this issue.

¶27    In establishing that his attorney rendered constitutionally ineffective assistance, Archuleta "bears the burden of assuring the record is adequate." *State v. Litherland*, 2000 UT 76, ¶ 16, 12 P.3d 92. If the record is inadequate, "we construe any deficiencies in favor of a finding that counsel performed effectively." *State v. de la Cruz-Diaz*, 2012 UT App 179, ¶ 4, 282 P.3d 1041 (quotation simplified). Here, there is no evidence in the record that supports Archuleta's claim that his attorney failed to investigate the issue of Archuleta's competence at the plea hearing.

¶28    Archuleta claims that he told his attorney approximately a week after entry of his guilty plea that he was intoxicated at the time of his plea hearing and that there was "proof in the jail" in the form of a write-up. But Archuleta never submitted any evidence to support this assertion, or any evidence that his attorney failed to adequately investigate it.[6] Indeed, as the sentencing court observed, Archuleta's attorney was with Archuleta when he pled guilty and had an opportunity to observe his behavior and demeanor first-hand. Archuleta fails to explain why, in this case, his attorney's observations were an inadequate method of gauging whether Archuleta's "ability to understand the plea agreement was impaired," *see State v. Ciccolelli*, 2019 UT App 102, ¶ 13, and does not say what else he believes his attorney should have done to investigate further, or what else—other than the jail citation dated December 1, which we have already found to be unhelpful—the attorney might have discovered. In short, Archuleta has not persuaded us that all reasonable attorneys would have pursued the matter further.

¶29    On this record, Archuleta has not carried his burden of demonstrating that his attorney performed deficiently by failing to further investigate his claim of intoxication; for all we can tell

---

6. As noted, even the jail write-up that Archuleta submitted with his rule 23B motion is dated two weeks after the plea hearing. Not only does this timeline contradict Archuleta's claim that he told his attorney about the proof a week after the hearing, but as discussed above the jail write-up is far from the "objective evidence" necessary to show that Archuleta did not make a knowing and voluntary plea. *See State v. Powell*, 2015 UT App 250, ¶¶ 5, 7, 361 P.3d 143; *see also State v. Ciccolelli*, 2019 UT App 102, ¶ 14 (stating that the defendant must provide some "evidence of what drugs he used, when he used them, how long they would have stayed in his system, or how they would have affected his competency").

from this record, his attorney completed a reasonable investigation but found nothing helpful. Archuleta has likewise not shown that his attorney was ineffective for failing to bring a motion to withdraw Archuleta's plea on that basis, a motion we have already determined was correctly denied. *See State v. Bond*, 2015 UT 88, ¶ 63, 361 P.3d 104 ("The failure of counsel to make motions that would be futile if raised does not constitute ineffective assistance." (quotation simplified)).

B

¶30 Next, Archuleta claims that his attorney performed deficiently by failing to sufficiently investigate a potential exculpatory witness, and for failing to take some action (such as filing a motion to withdraw the plea, a motion to arrest judgment, or a motion for a new trial) in connection with the investigation. We also reject this claim, because Archuleta has failed to carry his burden of demonstrating that his attorney rendered ineffective assistance on this issue either.

¶31 As an initial matter, Archuleta has failed to introduce into the record any actual exculpatory evidence that his trial counsel should have discovered after the plea hearing.[7] But even if such

_____

7. The witness statement that Archuleta procured on February 10, 2018 was never submitted to the district court and, because we denied Archuleta's rule 23B motion, is not properly before us on appeal. We denied Archuleta's rule 23B motion in part because, even if that witness statement had been made part of the record, it would not provide Archuleta with the assistance he seems to claim. Archuleta characterizes the statement as "totally exonerating," and asserts that the statement indicates that the witness (rather than Archuleta) "was responsible for the crime" and has "confess[ed] to the crime of which [Archuleta] stands accused." These statements are simply not accurate. In reality,

(continued…)

evidence existed, Archuleta has not demonstrated that—post-plea and prior to sentencing[8]—his attorney had any sort of useful outlet for such evidence. Although Archuleta's arguments along these lines are not well-developed, he does postulate that an attorney, armed with such evidence, could have potentially made three types of motions: a motion to withdraw the plea, a motion to arrest judgment, or a motion for a new trial. We discuss each potential option in turn, but conclude that Archuleta has fallen short of convincing us that any of them would have been viable.

¶32    First, Archuleta has not persuaded us that such evidence would have helped him support a successful motion to withdraw his plea. As discussed above, to withdraw a guilty plea a defendant must show that the plea was not knowingly and voluntarily made. *State v. Ruiz*, 2012 UT 29, ¶ 32, 282 P.3d

---

(…continued)
the witness claims he rode along with three individuals—"Deana Bailey," a "Mexican" man known as "Jaybird," and a "white male" known as "Sam"—on the night of the incident, thinking they were going to purchase some "dope." According to the witness, when the foursome arrived at the house, Deana ordered him to stay with the vehicle while she and the two men went inside the house armed with guns. At no point does the witness admit to entering the residence or assaulting anyone; he certainly does not confess to committing the charged crimes in Archuleta's place. And Archuleta has presented no evidence of the identity of either Jaybird or Sam; for all we know, one of those men was Archuleta, in which case the witness's version of events would not be inconsistent with the State's.

8. Archuleta does not claim that his counsel was aware of, or should have investigated, any particular witness prior to the entry of his plea.

998 (stating that, in light of the amendment to Utah Code section 77-13-6, "judges may now grant a motion to withdraw *only* when they determine that a defendant's plea was not knowingly and voluntarily entered"). Archuleta has not directed our attention to a single Utah case decided under the auspices of our current plea withdrawal statute that allows the withdrawal of a guilty plea based upon the post-plea discovery of additional evidence.[9] And Archuleta has not cited any out-of-state case law supporting this proposition either; indeed, our own research reveals that other jurisdictions appear reluctant to allow the withdrawal of guilty

---

9. In *State v. Ruiz*, 2012 UT 29, 282 P.3d 998, our supreme court disavowed its previous holding in *State v. Gallegos*, 738 P.2d 1040 (Utah 1987), in which it had interpreted a prior version of the plea withdrawal statute. In *Gallegos*, the defendant sought to withdraw his guilty plea after the State's lead witness admitted, in a sworn affidavit, that she had lied at the preliminary hearing. *Id.* at 1041. Interpreting the statutory language at the time, which allowed a guilty plea to be withdrawn "upon good cause shown and with leave of court," Utah Code Ann. § 77-13-6 (Allen Smith Co. 1982), the *Gallegos* court held that "a presentence motion to withdraw a guilty plea should, in general, be liberally granted," 738 P.2d at 1042. In 2003, our legislature struck the "good cause shown" language from the plea withdrawal statute, *see* Utah Code of Criminal Procedure Amendments, ch. 290, § 1, 2003 Utah Laws 1321, and the current statute allows withdrawal "only upon . . . a showing that [the plea] was not knowingly and voluntarily made," Utah Code Ann. § 77-13-6(2)(a) (LexisNexis 2017). In *Ruiz*, our supreme court acknowledged the effect of this amendment and accordingly held "that the 'liberally granted' instruction given in *Gallegos* is no longer applicable," and that "based on the plain language of the Plea Withdrawal Statute, . . . on a presentence motion to withdraw, the burden of proof is on the defendant, who must show that his or her plea was not knowingly and voluntarily made." *Ruiz*, 2012 UT 29, ¶ 37.

pleas under such circumstances. *See, e.g.*, *In re Reise*, 192 P.3d 949, 955 (Wash. Ct. App. 2008) (stating that by pleading guilty, a defendant "assumes the risk that the State's potential trial evidence will weaken: a State witness might not attend trial, might move away, might die; a new exculpatory witness might come forward; or new laboratory tests might be less conclusive," and noting that "[t]he passage of time always changes the quantity and quality of potential State's evidence," and concluding that, "by pleading guilty, the defendant gives up the right to force the State to prove its case with the potential evidence" and therefore "a guilty plea thus generally bars a later collateral attack based on newly discovered evidence"). After all, evidence discovered *after* entry of a plea does not necessarily go to whether the plea was knowingly and voluntarily made at the time it was entered. Because Archuleta cites no law supporting his contention that a motion to withdraw would have been available in this situation, and because he makes no attempt to articulate why a reasonable attorney would have brought such a motion in the absence of helpful authority, *see State v. Silva*, 2019 UT 36, ¶ 20, he has not carried his burden of demonstrating that his attorney was ineffective for failing to file a motion to withdraw his plea based on newly-discovered evidence, *see State v. Bond*, 2015 UT 88, ¶ 63, 361 P.3d 104 ("The failure of counsel to make motions that would be futile if raised does not constitute ineffective assistance." (quotation simplified)).

¶33 Archuleta has likewise failed to demonstrate how the witness's statement—or even a statement from a witness claiming that he had committed the charged crimes in Archuleta's place—would have been helpful in supporting a motion to arrest judgment. Such motions are reserved for exceptional situations, such as where "the facts proved or admitted do not constitute a public offense" or where "the defendant is mentally ill." *See* Utah R. Crim. P. 23. Archuleta cites no case in which a motion to arrest judgment was granted post-plea due to the belated discovery of evidence of the type

Archuleta claims to have, and there is Utah case law suggesting that such a motion may be unavailable in this context in any event. *See State v. Black*, 2015 UT App 30, ¶ 17, 344 P.3d 644 (holding that "it was error for the district court to arrest judgment based upon evidence never presented to the jury"). And even if we were to assume that a motion to arrest judgment were available in this context, the evidence Archuleta claims to have would not cause a court to grant such a motion, because that evidence would not—as might, say, a recantation by the State's star witness, or immutable physical proof of innocence (from DNA, for instance)—demonstrate a "manifest injustice," *see Reise*, 192 P.3d at 956, or even necessarily render the evidence that the State described at the plea hearing "so inconclusive or so inherently improbable . . . that reasonable minds must have entertained a reasonable doubt" about Archuleta's involvement, *see State v. Bolson*, 2007 UT App 268, ¶ 10, 167 P.3d 539 (quotation simplified). At best, the witness statement gives notice of the existence of another witness, in addition to Archuleta, who could have challenged Smith's version of events. Such evidence, while certainly helpful to Archuleta, does not provide the sort of boost necessary to support a motion to arrest judgment, because even in the face of such a statement, the State would still have been in possession of evidence (among other things, Smith's testimony) that could, if credited, have supported a conviction. Accordingly, Archuleta's attorney could not have been constitutionally ineffective for failing to file such a motion. *See Bond*, 2015 UT 88, ¶ 63.

¶34 Finally, Archuleta has not carried his burden of demonstrating that filing a motion for a new trial on the grounds of newly-discovered evidence would have helped him in this situation. We note that the very name of the motion—for new *trial*—presupposes the existence of a first trial (or at least a judicial adjudication of some sort, as opposed to a negotiated resolution), as does the language of the rule. *See generally* Utah R. Crim. P. 24. Archuleta cites no Utah case law applying rule 24

post-plea in cases concerning newly-discovered evidence, and other jurisdictions appear reluctant to grant motions for new trial on the basis of newly discovered evidence following the entry of a guilty plea. *See Reise*, 192 P.2d at 955 (stating that "a guilty plea thus generally bars a later collateral attack based on newly discovered evidence"); *see also People v. Ramos*, 251 P. 941, 942 (Cal. Ct. App. 1926) (holding that "the right to a new trial . . . does not apply when the defendant is awaiting judgment under a plea of guilty"). As above, where Archuleta neither cites any law in support of his position, nor makes any attempt to articulate why a reasonable attorney would have brought the motion in the absence of helpful authority, he has not carried his burden of showing deficient performance by counsel. *See Bond*, 2015 UT 88, ¶ 63.[10]

CONCLUSION

¶35  The district court did not err when it denied Archuleta's motion to withdraw his plea, because Archuleta has not carried his burden of demonstrating that his plea was not knowingly and voluntarily entered. Further, Archuleta has not carried his burden of demonstrating that his attorney performed deficiently. We therefore affirm Archuleta's convictions.

_____

10. Archuleta also argues that his counsel was ineffective for acknowledging to the district court that he could find no support for withdrawing Archuleta's guilty plea at the time. Based on our review of the record in this case, counsel was correct in his assessment. Attorneys owe a duty of candor to the courts, Utah R. Prof'l Conduct 3.3, and we are certainly not inclined to open attorneys up to claims for ineffective assistance simply for complying with that duty.